In re David PORRAS, Debtor.

Randolph N. Osherow,
Trustee, Plaintiff,

v.

David Porras and William Edmiston,
Trustee of the Lucille Christie Blakley Trust and of the Lucille Christie Blakley Support Trust, Defendants.

Bankruptcy No. 95–30583–LK.
Adversary No. 97–3061.

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

May 26, 2004.

Bernard R. Given, II, Beck & Given, PC, El Paso, TX, for Debtor.

Michael M. Parker, Fulbright & Jaworski L.L.P., San Antonio, TX, for Debtor, Trustee and Plaintiff.

Jack Minyard Partain, Jr., Fulbright & Jaworski, San Antonio, TX, for Trustee.

Randolph N. Osherow, San Antonio, TX, pro se.

Gregg D. Stevens, Louise P. Hytken, U.S. Dept. of Justice, Dallas, TX, for Plaintiff.

Ben L. Krage, Kasmir & Krage, Michael P. Gibson, Timothy A. Duffy, Burleson, Pate, Gibson, Bobby M. Rubarts, Craig W. Budner, Hughes & Luce, Dallas, TX, for Defendants.

### MEMORANDUM OPINION REGARDING PLAINTIFFS' RENEWED SECOND JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT AND THE MOTION OF DEFENDANT BLAKLEY TRUST AND OF LUCILLE CHRISTIE BLAKLEY FOR PARTIAL SUMMARY JUDGMENT

LARRY E. KELLY, Chief Judge.

## CONTENTS

SUMMARY JUDGMENT STANDARDS..........................................92

PRELIMINARY ISSUE: WHETHER THE IRS HAS STANDING ...................93

THE PLAINTIFFS' FRAUDULENT TRANSFER CAUSES OF ACTION .............96

 Defensive Issue: Whether all of Plaintiffs' fraudulent transfer actions are barred by the statute of limitations of Section 24.010 of the Texas Uniform Fraudulent Transfer Act .............................................96

 Fraudulent Transfer of the Oaklawn Property................................97

 "Preliminary Defensive" Issue: Whether the Oaklawn Property was the Debtor's homestead at the time of the transfer....................98
 Plaintiffs' First Element: Whether the Debtor received reasonably equivalent value...............................................100
 Plaintiffs' Second Element: Whether the Debtor made the transfer with actual intent to hinder delay or defraud creditors................103

 Fraudulent Transfer of the 100 Acres Remainder Interest ....................105

 Defensive Issue: Whether the actions are barred by the statute of limitations of Section 546(a).......................................106
 Defensive Issue: Whether a contingent remainder can be the subject of a fraudulent transfer ..................................108
 Defensive Issue: Whether, because of the contingent nature of the 100 Acres Remainder Interest, the Plaintiffs' cause of action is not "ripe" for adjudication .........................................112
 Plaintiffs' Elements: Whether the Debtor had an interest in property and whether he transferred that interest ...................112
 Plaintiffs' Element: Whether the Debtor received less than "reasonably equivalent value" in exchange for his 100 Acres Remainder Interest...........................................114
 Defensive Issue: Whether the Plaintiffs' fraudulent transfer actions with respect to the 100 Acres Remainder Interest are prohibited by the Rooker–Feldman Doctrine ................................115

 The Christie Property Trust Interest .....................................116

 Defensive Issue: Whether Blakley is a necessary party ...............117
 Defensive Issue: Whether the Plaintiffs' fraudulent transfer actions with respect to the Christie Property Trust Interest are barred by the statute of limitations of Section 546(a) .........................119
 Plaintiffs' Elements: Whether the Debtor had an interest in property and whether there was a transfer of that interest.....119
 Plaintiffs' Element: Whether reasonably equivalent value was received.................................................125
 Defensive Issue: Whether, because of the contingent nature of the Christie Property Remainder Interest, the Plaintiffs' cause of action is not "ripe" for adjudication ...........................127
 Defensive Issue: Whether the Plaintiffs' fraudulent transfer actions with respect to the Christie Property Trust Interest are prohibited by the Rooker–Feldman Doctrine .......................127

THE PLAINTIFFS' ACTIONS TO DECLARE THE TRUST'S PROPERTY TO
BE PROPERTY OF THE DEBTOR'S ESTATE ................................. 128

 Defensive Issue: Whether Blakley is a necessary party ........................ 128

 Plaintiffs' Cause of Action: Whether the Trust was Porras's self-settled
 spendthrift trust ...................................................... 128

 Plaintiffs' Cause of Action: Whether the Trust should be declared null and
 void because under Porras's complete dominion and control ................. 135

 Plaintiffs' Cause of Action: Whether the Trust's assets should be declared
 property of the estate because it was a sham and/or Porras's alter
 ego/nominee ......................................................... 137

SUMMARY AND CONCLUSION ............................................. 139

This matter has a long, long history before this court. For a lengthy period of time, this adversary proceeding was abated while the IRS's claim against the Debtor was being adjudicated in this court (which allowed that claim in an amount in excess of $20 million—*see* Plaintiffs' Exh. 25), and while the criminal case against the Debtor for bankruptcy fraud and money laundering was adjudicated in the U.S. District Court in this District (which found him guilty—*see* Plaintiffs' Exh. 27). Now the Chapter 7 Trustee and the IRS request this court to enter partial summary judgment on several of their causes of action in this adversary proceeding.

Specifically, the Plaintiffs allege they are entitled to partial summary judgment avoiding, under one or more of a number of Texas fraudulent transfer statutes, the transfers of three property interests of the Debtor: a condominium located in Midland (the "Oaklawn Property"); the Debtor's remainder interest, after his mother's life estate, in 100 acres of land located in Collin County [1] (the "100 Acres Remainder Interest"); and the Debtor's claim to a 1/7th residual interest in all property in the Christie Property Trust (the "Christie Property Trust Interest").

In the alternative, the Trustee and the IRS seek a declaration that the latter two interests were contributed to the Lucille Blakley Trust (the "Trust") as a partial self-settlement of that Trust by the Debtor, whom they assert is also a beneficiary of that Trust, so that the 100 Acres and the Christie Property Trust Interest are property of the estate subject to the Debtor's creditors' claims.

[It may be helpful at this point to explain that there are several trusts that have been involved in this adversary and this bankruptcy case. The Trust that is a party to the motions for summary judgment addressed in this Opinion is the Lucille Christie Blakley Trust. The Lucille Christie Blakley Support Trust is also a defendant in this suit and was a party to previous motions for summary judgment, already ruled on by this court. Finally, the Christie Property Trust is not a party to this suit, although (as will be discussed below) the Plaintiffs herein do allege that the Debtor transferred certain property interests that the Christie Property Trust ultimately came to hold.]

As yet another alternative, the Trustee and the IRS seek a determination that the

---

**1.** This land has since been sold pursuant to this court's order, and the proceeds are being held in the court's registry.

Debtor's complete dominion and control over the Trust renders it null and void, and/or that the Trust is a sham or an alter ego/nominee of the Debtor so that, in either case, the property in the Trust should be declared property of the Debtor's estate.

Finally, the Trustee and the IRS state in one sentence in the "Background" section of their Amended Complaint that if HWD Corporation is a true corporation, then the Trustee "through this lawsuit seeks to pierce HWD's corporate veil." Amended Complaint, p. 4, para. 5. This "cause of action" (or remedy) is not elaborated on, or even mentioned again, in the Amended Complaint. The Trust and Lucille Christie Blakley ("Blakley"),[2] the named beneficiary of the Trust, oppose the Plaintiffs' Second Motion for Partial Summary Judgment on a number of grounds.[3] In addition, Blakley and the Trust also contend, in their own Motion for Partial Summary Judgment, that they are entitled to judgment as a matter of law denying

relief on the Trustee's and IRS's fraudulent transfer causes of action as to the 100 Acres Remainder Interest and the Christie Property Trust Interest. In particular, they advance four grounds for summary judgment in their favor: the causes of action are time barred by statutes of limitations; the Debtor did not have a property interest under state law that he could have fraudulently transferred; the causes of action are collateral attacks on a September, 1988, agreed judgment entered in state court; and the causes of action are not ripe for adjudication.

In this Memorandum Opinion, the court will address the causes of action that are the subjects of the Plaintiffs' Second Motion for Partial Summary Judgment, and the matters raised in the Trust's Motion for Partial Summary Judgment as they relate to those causes of action. For purposes of this Memorandum Opinion, the following are the "live" pleadings considered by the court:

---

**2.** The original named Defendants in this adversary proceeding were David Porras, individually, and William H. Edmiston as Trustee of the Blakley Trust and as Trustee of Lucille Blakley Support Trust. On April 7, 2000, a hearing was held on Lucille Christie Blakley's motion to remove William Edmiston as Trustee of the Blakley Trust and to appoint a successor Trustee. The parties appear to agree that the motion was granted and David Porras was appointed successor Trustee. However, no order has ever been entered.

The motion of Lucille Christie Blakley to intervene in this adversary proceeding was denied in October of 1997, although since that date she has appeared in the case as an interested party, without objection by any other party. "Lucille Christie" has joined with the Blakley Trust in the Response in opposition to the Second Motion for Partial Judgment. "Lucille Christie Blakley" has joined with the Blakley Trust in its Motion for Summary Judgment.

One of the Trust's and Blakley's arguments is that the action lacks a necessary party—her—and therefore cannot proceed. (The grounds pled—the alleged transfers by the Trust of two of the properties to her individually—were not raised in her earlier motion to intervene). As discussed below, the court agrees that she is necessary to the litigation of the Plaintiffs' actions to the extent they seek to recover the 100 Acres Remainder Interest and the Christie Property Trust Interest, and is entering an order permitting the amendment of the Complaint to join her as to those causes of action. Pending any such amendment, however, for purposes of these motions for summary judgment, the court will consider Blakley's arguments and interests only to the extent they do not differ from the Trust's in the matters now before the court.

**3.** As discussed below, the Debtor filed no response whatsoever to the Plaintiffs' Second Joint Motion for Partial Summary Judgment.

| Docket No. | Pleading | Date Filed |
|---|---|---|
| 1 | Complaint Seeking Declaratory and Injunctive Relief and Seeking to Avoid and Recover Fraudulent Transfers | 5/2/97 |
| 142 | Amended Complaint Seeking Declaratory and Injunctive Relief and Seeking to Avoid and Recover Fraudulent Transfers | 6/4/99 |
| 147 | Amended Complaint Seeking Declaratory and Injunctive Relief and Seeking to Avoid and Recover Fraudulent Transfers | 7/6/99 |
| 13 | Answer for Defendant William H. Edmiston, Trustee of the Lucille Christie Blakley Trust and William H. Edmiston, Trustee of the Lucille Christie Blakley Support Trust | 7/30/97 |
| 14 | Answer for Defendant David Porras | 7/30/97 |
| 11 | Complaint in Intervention | 7/8/97 |
| 16 | Answer of Defendant William H. Edmiston, Trustee of the Lucille Christie Blakley Trust and William H. Edmiston, Trustee of the Lucille Christie Blakley Support Trust to the Complaint in Intervention of the IRS | 8/8/97 |
| 17 | Adversary Defendant David Porras' Answer to Complaint in Intervention by United States of America | 8/8/97 |
| 101 | Randolph N. Osherow's, Chapter 7 Trustee, and the United States of America's Second Joint Motion and Brief for Partial Summary Judgment (including Appendices I and II of Exhibits thereto) | 4/24/98 |
| 172 | Randolph N. Osherow's, Chapter 7 Trustee, and the United States of America's Renewed Second Motion for Partial Summary Judgment | 5/21/02 |
| 173 | United States of America's Brief in Support of Renewed Second Motion for Partial Summary Judgment | 5/21/02 |
| 112 | Response in Opposition to Plaintiffs' Second Joint Motion for Partial Summary Judgment | 5/25/98 |
| 113 | Appendix to Response in Opposition to Plaintiffs' Second Joint Motion for Partial Summary Judgment | 5/26/98 |
| 175 | Supplemental Response in Opposition to Renewed Second Motion for Partial Summary Judgment | 6/13/02 |
| 120 | Joint Reply to Response in Opposition to Plaintiffs' Second Joint Motion for Partial Summary Judgment | 6/19/98 |
| 174 | The Blakley Trust and Lucille Christie Blakley's Motion for Partial Summary Judgment and Supporting Brief (including Exhibits) | 6/13/02 |
| 176 | Joint Response in Opposition to the Blakley Trust and Lucille Christie Blakley's Motion for Partial Summary Judgment | 6/27/02 |

Separate orders on each of the Motions for Summary Judgment, based on the findings of fact and conclusions of law contained herein, will be entered.

## SUMMARY JUDGMENT STANDARDS

In an adversary proceeding, summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bailey v. United Airlines,* 279 F.3d 194, 198 (3d Cir.2002). An issue is material if its reso-lution could affect the outcome of the action. *Perez v. United States,* 312 F.3d 191, 193 (5th Cir.2002), *citing Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See Perez,* 312 F.3d at 193, *citing Olabi-siomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999); *see also Matsushi-ta Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (when ruling on a motion for summary judgment, the court

must view the evidence in the light most favorable to the non-movant). In other words, the court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot simply rest on its pleadings. *See* Fed.R.Civ.P. 56(e). A non-moving party "will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." *In re Ikon Office Solutions, Inc.,* 277 F.3d 658, 666 (3d Cir.2002). This requirement is not satisfied by "speculation, conjecture, or fantasy"; it requires sufficient probative evidence to allow a finding in its favor, assuming the evidence is established at trial. *Wilson v. International Business Machines Corp.,* 62 F.3d 237, 241 (8th Cir.1995); *see also Brown v. City of Houston, Tex.,* 337 F.3d 539, 540–41 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."), *citing Bridgmon v. Array Systems Corporation,* 325 F.3d 572, 577 (5th Cir.2003) *and Hugh Symons Group, PLC v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.2002). In other words, if "the evidence submitted by the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted because '[w]here the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial.'" *Hawking v. Ford Motor Credit Co.,* 210 F.3d 540, 545 (5th Cir.2000).

In this case, although the Trust has responded to the Plaintiffs' Second Joint Motion for Summary Judgment, the Debtor has filed no response whatsoever by way of evidence or argument. However, because the Plaintiffs seek only one judgment—that the properties in question belong to the Debtor's estate because fraudulently transferred or for other reasons—the court will in essence ignore the Debtor's default on the Plaintiffs' Motion and allow instead allow him to reap the benefit of, or be bound by, the Trust's arguments and evidence. Thus, the court will grant summary judgment against the Debtor as to any cause of action on which there is no dispute as to any genuine issue of material fact, as established by the Plaintiffs through their summary judgment evidence. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").

## PRELIMINARY ISSUE: WHETHER THE IRS HAS STANDING

The Trust and Blakley raise one matter—the IRS's standing in the case—that logically should be addressed first. *See Telpro, Inc. v. Litzler,* 2002 WL 31553971, *3 (N.D.Tex.) ("The question of standing is jurisdictional and must be addressed at the outset."), *citing United States v. Hays,* 515

U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

■ In particular, Blakley and the Trust argue in response to the Plaintiffs' request for summary judgment that the IRS has no standing to pursue the fraudulent transfer and alter ego type causes of action under Texas law—that those claims belong to the Debtor's estate and only the Trustee can assert them. It is true that if a cause of action *belongs* to the estate, then the trustee has exclusive standing to assert the claim. *In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). In *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1153 (5th Cir. 1987), the Court held that an "alter ego action is a right of action belonging to [the debtor] and, as such, is property of the estate." Accordingly, such actions may only be brought by the Trustee.

■ However, in *American National Bank of Austin v. MortgageAmerica Corporation (In re MortgageAmerica Corporation)*, 714 F.2d 1266, 1277 (5th Cir.1983), the Court held that "[p]roperty fraudulently conveyed and recoverable under the Texas Fraudulent Transfers Act remains, despite the purported transfer, property of the estate." It did *not* hold that the fraudulent conveyance causes of action themselves *belonged* to the estate, but rather that the actions were stayed by the automatic stay because they were attempts to obtain or control property of the estate. Thus, even though the Trustee and the IRS concede in their Joint Reply to Response in Opposition to Plaintiffs' Second Joint Motion for Summary Judgment that all of the causes of action they assert belong to the estate and therefore the IRS lacks standing to pursue them independently, that is not the case with respect to the fraudulent transfer actions they assert. Those actions do not belong to the estate,

and therefore the IRS, as an individual creditor of the Debtor, has standing to bring them, as does the Trustee by virtue of § 544. This court, in permitting the intervention by the IRS in this case, implicitly if not explicitly has modified (or now modifies, nunc pro tunc) the automatic stay to allow the IRS to assert for the benefit of the bankruptcy estate, jointly with the Trustee, the fraudulent transfer causes of action against the Debtor and the Trust. *See also In re Cybergenics*, 330 F.3d 548 (3d Cir.), *cert. dismissed*, —— U.S. ——, 124 S.Ct. 530, 157 L.Ed.2d 406 (2003) (bankruptcy courts may authorize committees to sue derivatively to recover property for the benefit of the estate).

The Plaintiffs' other actions (i.e., to disregard the form of the Trust and recover its assets, because the Trust is a sham and/or the alter ego of the Debtor, and/or because it was at least partially self-settled, and/or because the Debtor exercised dominion and control over it), differ factually and procedurally from the alter ego action that was held to be property of the corporate estate in *S.I. Acquisition*. In that case, creditors of an entity in bankruptcy were suing the individual principals of that entity/debtor (a corporation in that case) on the theory that they had used the entity as their alter ego. The Trustee's and IRS's use of an alter ego theory of recovery here is just the reverse: creditors (or the Trustee as their representative) of an individual in bankruptcy are suing the entity on the theory that the individual debtor used the non-debtor entity as his alter ego.

> Piercing the corporate veil in "reverse" has been recognized in many jurisdictions as an equitable doctrine used to prevent injustice by corporate principals.... Texas, in particular, has recognized the doctrine for over thirty years. *See Zahra Spiritual Trust v. United*

*States,* 910 F.2d 240, 243–45 (5th Cir. 1990) (reverse pierce permitted to reach assets of corporation that was the alter ego of individual who owed tax debt); *Zisblatt v. Zisblatt,* 693 S.W.2d 944 (Tex. Ct.App.1985) (wife sought to use reverse piercing in divorce action); *Dillingham v. Dillingham,* 434 S.W.2d 459 (Tex.Ct. App.1968) (same); *American Petroleum Exch., Inc. v. Lord,* 399 S.W.2d 213 (Tex. Ct.App.1966) (judgment creditor of shareholder sought to use reverse piercing to proceed against corporation's assets).

*In re Schimmelpenninck,* 183 F.3d 347, 357 n. 21 (5th Cir.1999) (citations omitted).

The parties in *Schimmelpenninck* argued that the reverse veil piercing action being asserted was distinguishable from the one that the Court in *S.I. Acquisition* found was "in the right of" the corporate debtor and therefore property of its estate. They argued that the policy behind the original doctrine—to hold accountable those persons or entities that controlled and misused the corporate form—would be undermined if the veil piercing cause of action were determined to belong to the controlling party. *Id.* at 357. Although the Court declined to expressly decide whether the reverse piercing cause of action belonged to the estate (holding instead that that cause of action was stayed on other grounds), in *dicta* it clearly rejected the argument that the action did not belong to the estate. *See id.* at 358, n. 23 (agreeing that the reverse piercing facts were a "distinction without a difference" from the traditional veil piercing fact situation).

■ Based on the Court's comments and reasoning in *Schimmelpenninck,* this court concludes that the alter ego/sham and domination and control causes of action asserted in this case, under most circumstances, may only be asserted by a trustee. For the same reason, the court also concludes that the Plaintiffs' action to declare the Trust property to be property of the estate because the Trust was partially self-settled and the Debtor is a beneficiary, may also only be asserted by a trustee under most circumstances.

■ In fact, the Trustee *does* assert those claims in this suit. Mr. Osherow, as the Chapter 7 trustee for the Debtor's estate, *is* a plaintiff. The IRS has intervened only to insure that its interests as a creditor of the Debtor (interests that the Trustee as a fiduciary also represents in this case) are adequately represented. *See In re MortgageAmerica,* 714 F.2d at 1275 ("A trustee acting under section 544 'acts as a representative of creditors.'"). Moreover, as a practical matter, as all the parties are well aware, the magnitude and priority of the IRS's claims in this case as compared to the amount of assets that are likely to be distributed mean that the IRS is almost certainly the only party with a real interest in this suit. In essence, because the IRS is the only creditor with anything substantial to gain from these actions, they are in reality its "personal" claims, as opposed to being "general" claims of all of the Debtor's creditors. *See In re Schimmelpenninck,* 183 F.3d 347, 359 (5th Cir.1999) ("We do not imply that a creditor can never assert an individual claim against the debtor. Indeed, we intend just the opposite. Courts and commentators alike recognize differences between a 'personal' claim—one in which an individual creditor has been harmed—and a 'general' claim—one in which the creditors collectively have been harmed.").

Accordingly, the court finds and concludes that the IRS has standing in this case—either as the holder of the claim or as the intervenor and real party in interest—with respect to all the claims it asserts. Such a finding harms no other

creditor and is not inconsistent with the admonishment of the Court in *Schimmelpenninck* that, "in applying the above rules [on determining whether a cause of action belongs to the estate or is an attempt to recover property of the estate], a court must keep in mind the general bankruptcy policies of securing and preserving the debtor's property and ensuring equal distribution of the debtor's assets to similarly-situated creditors." *Id.* at 355. In this proceeding, any recovery is for the benefit of the estate. If there are issues related to the priority of claims to any property recovered, those claims can be sorted out later, through appropriate pleadings.

## THE PLAINTIFFS' FRAUDULENT TRANSFER CAUSES OF ACTION

█ *Defensive Issue: Whether all of Plaintiffs' fraudulent transfer actions are barred by the statute of limitations of Section 24.010 of the Texas Uniform Fraudulent Transfer Act.* The Trust and Blakley argue in their Motion for Partial Summary Judgment that all of the Plaintiffs' fraudulent transfer actions, which are brought under the Texas Uniform Fraudulent Transfer Act (Tx. Bus. & Comm. § 24.001 et seq., or "TUFTA"), are time barred because extinguished by § 24.010(a) of that statute. Specifically, § 24.010(a) provides:

**§ 24.010. Extinguishment of Cause of Action**

(a) Except as provided by Subsection (b) of this section, a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

(1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or

(3) under Section 24.006(b) of this code, within one year after the transfer was made.

The Trust and Blakley point out that, according to the Plaintiffs' contentions, the 100 Acres Remainder Interest and the Christie Property Trust Interest were transferred to the Trust upon its creation in "September or October of 1988" under an agreed state court judgment, and the Oaklawn Property was later also transferred to the Trust on April 9, 1991. Amended Complaint, p. 8, ¶ 1, and p. 9, ¶¶ 4, 6. The Debtor undisputedly filed his bankruptcy case on May 3, 1995, more than four years later than these dates. Thus, the Trust and Blakley contend, the actions to avoid the transfers were extinguished under whatever subsection of § 24.010(a) applies.

The IRS and the Trustee respond that § 24.010 does not apply and that the applicable statute of limitations is instead found in 26 U.S.C. § 6502(a)(1). Specifically, that section provides in pertinent part: "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun ... within 10 years after the assessment of the tax ...." The Trust and the IRS argue that under § 544(b) of the Bankruptcy Code, the Trustee is entitled to "stand in the shoes" of the IRS and use "applicable non-bankruptcy law"—in this case, § 6502—to bring an action under TUFTA

as a "proceeding in court" to collect the taxes owed by the Debtor.

Earlier in this case the Trust and Blakley urged the exact argument that they now assert, and the issue was then decided adversely to them in the court's denial of the Trust's first Motion for Partial Summary Judgment, albeit without prejudice to their raising it again later in this case. *See* docket entry #126, Order Denying Motion for Partial Summary Judgment. The court now reiterates that ruling.

▆▆▆ First, the Trustee under § 544(b) may use statutes of limitations available to any creditor in whose shoes he stands in bringing the action. 11 U.S.C. § 544(b) ("the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim"); *In re Graven*, 64 F.3d 453, 456 n. 5 (8th Cir.1995) ("If an unsecured creditor existed when the transfer was made, section 544 may allow the trustee to reach back to transfers made more than one year before the bankruptcy filing, because the statute of limitations from the state or applicable nonbankruptcy law applies and may allow the avoidance of transfers more than one year old."). In addition, as discussed above, the IRS is entitled to bring the fraudulent transfers in its own name, and so would be entitled to whatever statute of limitations applies to it. Under *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), the United States is neither bound by state statutes of limitations nor is subject to the defense of laches, and the same rule applies whether the United States brings its suit in its own courts or in those of a state.

The Trust argues that the rule of *Summerlin* should not apply here because § 24.010 is not merely a statute of limitations, but rather provides that the Plaintiffs' causes of action under TUFTA simply ceased to exist—were "extinguished" by the time the Debtor's case was filed, and § 6502 therefore has no effect. The Trust and Blakley rely on *United States v. Vellalos*, 780 F.Supp. 705 (D.Hawai'i 1992), a case which, they admit as late as June of 2002 in their Motion for Partial Summary Judgment, "is not universally followed." They argue instead that those cases contrary to *Vellalos* are not well-reasoned. Defendant's Motion for Partial Summary Judgment, p. 12, fn. 9.

This court rejected *Vellalos* in July of 1998 when it first ruled on this issue in this case, holding that a federal limitations period applicable to the IRS's actions governed, instead of § 24.010. Since then, the *Vellalos* case has been expressly abrogated by *Bresson v. Commissioner of Internal Revenue*, 213 F.3d 1173 (9th Cir.2000), a fact not mentioned by the any of parties in their briefing on the current Motions. In *Bresson*, the Court of Appeals addressed a provision of the Uniform Fraudulent Transfer Act adopted in California that is virtually identical to § 24.010, and rejected the argument it was somehow distinguishable from a statute of limitations governed by the rule of *Summerlin*. In doing so, the *Bresson* Court expressly joined other Circuit Courts whose opinions had been inconsistent with *Vellalos*, such as *United States v. Fernon*, 640 F.2d 609 (5th Cir. 1981). This court finds *Fernon* to be controlling and binding on it. Accordingly, the Trust's and Blakley's Motion for Partial Summary Judgment is denied as to their affirmative defense of statute of limitations based on § 24.010.

### Fraudulent Transfer of the Oaklawn Property

The Trustee and the IRS contend that the Debtor's transfer of his fee ownership of a condominium located at 28 Oaklawn

Park in Midland, Texas, to the Trust on April 9, 1991, was fraudulent as to the Debtor's creditors. Specifically, the Plaintiffs seek avoidance of the transfer and recovery of the property or its value under one or more of the following provisions of TUFTA: § 24.005(a)(1), § 24.005(a)(2), § 24.006(a), and/or § 24.006(b). Those sections provide:

### § 24.005. Transfers Fraudulent as to Present and Future Creditors

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

### § 24.006. Transfers Fraudulent as to Present Creditors

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

For summary judgment purposes, the Trust and Blakley do not dispute all of the elements of these causes of action.[4] They do, however, argue and offer summary judgment evidence that they contend shows that genuine issues of material fact exist regarding two of those elements: whether the Debtor received reasonably equivalent value for the Oaklawn Property, and whether the transfer of that Property was made with actual intent to hinder, delay, or defraud creditors. In addition, as a preliminary issue they challenge whether the transfer of the Oaklawn Property can be avoided at all because, they claim, it was the Debtor's homestead at the time of the transfer.

*"Preliminary Defensive" Issue: Whether the Oaklawn Property was the*

---

4. Specifically, the Trust and Blakley have not disputed, for summary judgment purposes:
(a) that at the time of the transfer the Debtor either was insolvent, and was engaged or was about to engage in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction; and intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due;
(b) that creditors of the Debtor existed at the time of the transfer who remained unpaid as of the filing of the bankruptcy case; and
(c) that the transferee of the property was an insider of the Debtor.

*Debtor's homestead at the time of the transfer.* As a threshold issue, in their Response to the Plaintiffs' request for summary judgment the Trust and Blakley make the legal and factual argument that, regardless of whether the Plaintiffs can establish all the statutory elements under any or all of § 24.005(a)(1) and (a)(2), and § 24.006(a) and (b), the transfer of the Oaklawn Property cannot be avoided as a fraudulent transfer because it is the subject of a common law exception to those statutes. They contend that under Texas case law the transfer of exempt property cannot be a fraudulent transfer and the Property was the Debtor's homestead at the time of the transfer.

■ This court agrees that "[a]s a general rule, to invalidate a gift or other voluntary conveyance as fraudulent, the property must be of a kind to which a creditor can resort for payment of his debts, and creditors cannot complain of transfer of property immune from seizure." *In re Moody*, 77 B.R. 566, 577 (S.D.Tex.1987), *aff'd*, 862 F.2d 1194 (5th Cir.1989), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992), citing *Citizens Nat. Bank at Brownwood v. Turner*, 89 F.2d 600 (5th Cir.1937) and *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801 (1956); *accord, Crow v. First Nat. Bank of Whitney*, 64 S.W.2d 377, 379 (Tex.Civ.App.—Waco 1933, writ refused) ("It is well settled that homestead property is not subject to the payment of unsecured debts and that a conveyance thereof does not come within the purview of the statutes as a fraudulent conveyance.").

In fact, the homestead or exempt property "exception" to fraudulent conveyance law is more than a common law doctrine. Although none of the parties mentions it in their pleadings or briefs, the fact that the property transferred is exempt, if true, would negate one element of a fraudulent transfer action under any of the statutes that Plaintiffs rely on here. Specifically, § 24.002(12) of TUFTA provides that a " '[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ." Section 24.002(2)(B) then excludes from the meaning of "asset," all "property to the extent it is generally exempt under nonbankruptcy law . . . ." Thus, although not expressly articulated by the Trust and Blakley, the court will construe their argument regarding the homestead status of the Oaklawn Property as disputing that there was a "transfer" within the meaning of the Texas fraudulent transfer statutes.

■ The Trust and Blakley offer the Debtor's deposition testimony as evidence of the Oaklawn Property's homestead status. However, the passages cited merely support that it was the only residential property owned by the Debtor when he moved to Cloudcroft, New Mexico, which he states was in 1989 or 1990. Defendants' Exh. 9, pp. 96, 150–51. In addition, in the passage cited the Debtor testifies that he took all his personal belonging with him when he moved. Defendants' Exh. 9, p. 151. Thus, the summary judgment evidence offered by the Trust and Blakley on this issue at best relates to a time before the time of the transfer in 1991, and at worst supports an abandonment by the Debtor of the Oaklawn Property as his homestead prior to the transfer.[5]

---

5. The remainder of the evidence they cite does not appear to support their claims—pages 163 and 293 of the Debtor's deposition are cited but not included in the court's copy of Defendants' Exh. 9 and do not appear to be part of the summary judgment record, and the Debtor's deposition testimony on pages 301–02 of Exh. 9 does not support the facts that the Trust and Blakley claim it does.

Admittedly, there is some additional evidence in the summary judgment record that is contradictory: the Plaintiffs themselves refer to evidence tending to show that, at the time of the transfer, the Debtor resided at the Oaklawn Property and kept all his personal property there. *See* page 16, Plaintiffs' Second Motion for Partial Summary Judgment filed April 24, 1998. The Plaintiffs also cite Judge Furgeson's findings in his Opinion in support of the judgment against the Trust and Blakley in their wrongful levy action, that with respect to the Debtor's transfer of the Oaklawn Property, "[a]fter the conveyance, he still had full run of the home. There was no testimony that the conveyance of the residence caused any property to be moved . . . ." Plaintiffs' Exh. 3, pp. 35–36.

Because of the credibility problems of the Debtor, the Trust's and Blakley's evidence on this issue is anything but strong. However, the court finds that that evidence, together with the Plaintiffs' evidence, is sufficient to create a genuine issue of material fact regarding whether the Oaklawn Property was in fact the Debtor's homestead at the time of the transfer.[6] Accordingly, the court finds that the Plaintiffs' Motion for Summary Judgment on the fraudulent transfer actions related to the Oaklawn Property must be denied on this argument.

■■■■ *Plaintiffs' First Element: Whether the Debtor received reasonably equivalent value.* The requirement in § 24.005(a)(2) and in § 24.006(a) that the Plaintiffs show the Debtor made the transfer "without receiving a reasonably equivalent value in exchange" requires proof of two elements, the value of the property that was transferred and the value received in exchange, in order that the court

---

6. Further, even if the Property were found to be the Debtor's homestead at the time of the transfer, "[it is] also well established in Texas, that where there is a mere sham or pretended conveyance of exempt homestead property for the purpose of placing it beyond the reach of the grantor's creditors, so that after the exemption shall have terminated the grantor may still enjoy the benefit of the property while his creditors are held at bay, such a pretended transfer may be avoided by existing creditors and the property subjected to their debt when the exemption ceases." *Citizens Nat. Bank at Brownwood v. Turner*, 89 F.2d 600, 601 (5th Cir.1937), citing, among others, *Cox v. Shropshire*, 25 Tex. 113 (1860); *Baines v. Baker*, 60 Tex. 139 (1883); *Taylor v. Ferguson*, 87 Tex. 1, 26 S.W. 46 (1894); *Beard v. Blum*, 64 Tex. 59 (1885); *Eaves v. Williams*, 10 Tex.Civ.App. 423, 31 S.W. 86 (Tex.Civ.App. 1895, no writ); *see also United States v. Chapman*, 756 F.2d 1237, 1243–44 (5th Cir.1985) (expressing, in *dicta*, "some doubt that Texas law would support a claim of homestead right in a grantor who fraudulently conveyed the property to another, since the latter holds title—save as to the defrauded creditor—to the property."), citing *Stevens v. Cobern*, 109 Tex. 574, 213 S.W. 925, 926 (1919) (holding that the grantor "had no title or interest in the 335 acres of land, to which a homestead exemption could attach, subsequent to his [fraudulent] conveyance to [his] mother."); *but see United States v. Wilson*, 500 F.Supp. 831 (N.D.Tex.1980) (holding that, although a transfer by the taxpayer debtors to their children was void against the United States as a fraudulent conveyance, the taxpayers' homestead interest was recognized, based upon their possession of the property as a home before and after the conveyance).

Thus if the Debtor transferred the Oaklawn Property in a sham transaction to protect it from the claims of his creditors when he abandoned it as his homestead to move to Cloudcroft, intending to retain its benefits for himself, the transfer may still be subject to avoidance under the fraudulent transfer statutes. This requires a determination of the Debtor's actual intent in making this transfer, and the court finds that there are genuine issues of material fact regarding that issue (see discussion herein). The Trust's and Blakley's argument that the Plaintiffs' fraudulent transfer actions are defeated as a matter of law by a homestead determination thus depends on disputed facts that must be tried.

may assess the equivalency of those values. *See In re Besing*, 981 F.2d 1488, 1495 (5th Cir.), *cert. denied*, 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993) (noting, in construing 11 U.S.C. § 548, that "[i]n the usual case, a court must base its determination [of whether reasonably equivalent value has been given] upon subsidiary fact findings regarding the value of the property transferred and the 'value' received in exchange"), citing as an example *In re Emerald Oil Co.*, 807 F.2d 1234, 1239 (5th Cir.1987) (comparing the value of an assigned oil and gas interest to the payments made and liabilities incurred in exchange for the interest).

As to the value of the Oaklawn Property, only the Trust and Blakley even attempt to offer summary judgment evidence regarding the value of the Property at the time of the transfer. The Plaintiffs never mention the subject except for an unsupported statement in ¶ C(1) on page 6 of their Amended Complaint referring to the Trust's acquisition of, among other assets, "Porras' million dollar condominium in Midland." [7] Further, the only reference by the Trust and Blakley, on page 22 of their Response in Opposition to the Plaintiffs' Second Motion for Partial Summary Judgment, to any evidentiary support for a value cites Defendants' Exhibit 11 that in fact does not support the value of $250,000 that they claim it does. Nowhere in the excerpts from Edmiston's deposition that the Trust and Blakley include in their Exhibit 11 does the deponent provide testimony regarding any value. In fact, the only testimony on the issue is Edmiston's refusal to guess at a value for the Property when asked. Defendants' Exh. 11, p. 90.

The court notes that the Warranty Deed conveying the Property to the Trust, Plaintiffs' Exh. 2, contains a recitation that at the time of transfer it was subject to a lien in some unspecified amount; Edmiston testified that at the time of his deposition in June of 1996, the Trust still owed approximately $32,000 on that mortgage. Defendants' Exh. 11, p. 90. Thus, even if the court could assume that a 4,000 square foot condominium in Midland had *some* value in 1991, considering this evidence that the Oaklawn Property was encumbered, it cannot be assumed that the Property had a positive value at the time it was transferred.

With no competent summary judgment evidence whatsoever regarding the value of the property transferred, it would seem *per se* impossible for the Plaintiffs to show that the value received was less than reasonably equivalent. The Plaintiffs argue, however, that the court should find they have sustained their burden of proof on the issue of reasonably equivalent value, as a matter of law, because

> [d]uring the course of the case, the Movants have brought to the attention of the Court the failure of Porras and Edmiston to make proper discovery. As the Court is well aware, a failure to keep records is itself a badge of fraud. Further the failure to produce evidence may result in an inference that such evidence is unfavorable to the position asserted

---

7. The court through its own review has noted that Plaintiffs' Exhibit 17, the homeowners insurance policy on the Oaklawn Property, lists a value for the dwelling of $473,000 as of April 14, 1995. While this evidence has some probative value, because it relates to a date four years after the transfer in question, and because it is not know to what extent the Property was encumbered at that time (see the discussion below), the court finds that the insurance valuation alone is not sufficient to establish the value of the Property at the time of the transfer.

by the party in control of the evidence. . . .

\* \* \* \* \* \*

As the Court files reflect, [the Trustee] has repeatedly sought these documents from the Plaintiffs [*sic*]. No evidence has been produced which shows that the Blakley Trust gave any consideration to Porras for the transfer of the residence at 28 Oaklawn Park. Under the circumstance, an adverse inference is highly appropriate.

Plaintiffs' Second Joint Motion for Partial Summary Judgment, page 11, fn. 9 (*citations and quotations omitted*).

In fact, the Trust and Blakley *do* provide *some* summary judgment evidence regarding the value they allege was given for the transfer. In particular, they assert that the Oaklawn Property was transferred in exchange for the Trust's assumption of the indebtedness on the property, and cite in support Porras's testimony to the effect that the Trust assumed that debt which was approximately $80,000 at the time of the transfer. Response in Opposition to Second Joint Motion for Partial Summary Judgment, page 22 fn. 39, citing Defendants' Exh. 9, pp. 301–02. The Trust and Blakley also contend that the transfer was in consideration for almost four years of mortgage payments already made by the Trust on the Property by the time of the transfer. *Id.* at fn. 38, citing Defendants' Exh. 9, p. 163. Finally, they also argue that the transfer was in exchange for forgiveness of approximately $235,000 owed by Porras for amounts previously advanced to him for attorneys fees and other expenses he had incurred. *Id.* at fn. 41, citing Defendants' Exh. 9, p. 311.

None of these pieces of evidence, however, is any more than a self-serving statement by the Debtor. No notes, cancelled checks, or other documents are offered.

The Trust and/or Blakley clearly should be in possession or control of such documents if they exist. Those documents have been requested in discovery and not produced, and the Trust and Blakley still do not offer them in opposition to the Plaintiffs' request for summary judgment. Considering those facts, and in light of the serious credibility problems of the Debtor (*see* Plaintiffs' Second Joint Motion for Partial Summary Judgment, pp. 12–13), the offer of his testimony as the sole evidence on the issue of the consideration received for the Oaklawn Property barely rises to the level of "colorable." Again, the court notes that the Debtor individually did not file any response to the Plaintiffs' request for summary judgment. With respect to the Trust's and Blakley's response, if "the evidence submitted by the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted because '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial.' " *Hawking v. Ford Motor Credit Co.*, 210 F.3d 540, 545 (5th Cir.2000).

However, this court is mindful that on the Plaintiffs' request for summary judgment, the court is required to view the evidence in the light most favorable to the Trust. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, the issue of whether "reasonably equivalent value" was given is usually a factual one. *See In re Dunham*, 110 F.3d 286, 289 (5th Cir.1997) (noting, in construing § 548 of the Bankruptcy Code, that "the question of '[w]hether fair consideration [now "reasonably equivalent value"] has been given for a transfer is "largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts.' " ' "); *see also In re*

*Besing,* 981 F.2d 1488, 1494–95 (5th Cir.), *cert. denied,* 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993) (also construing § 548 and noting, prior to the *Dunham* decision on the issue, that "while there is some disagreement as to whether the ultimate determination of reasonable equivalency is a question of law or of fact, the inquiry is ordinarily fact-intensive.").

Thus, because there is *some* evidence on the value received—albeit very weak and vigorously disputed—and because there is virtually no evidence on the value of the Oaklawn Property at the time of the transfer, the court must conclude that there are genuine issues of material facts regarding reasonable equivalency of value. Therefore, the Plaintiffs' request for summary judgment on their causes of action under §§ 24.005(a)(2) and 24.006(a) must be denied for this reason as well. At a trial on the merits, however, this same failure on the part of the Trust and Blakley would more properly invoke the evidentiary presumption urged by the Plaintiffs.

██ *Plaintiffs' Second Element: Whether the Debtor made the transfer with actual intent to hinder delay or defraud creditors.* The Plaintiffs argue that this court may infer the Debtor's intent to hinder, delay or defraud his creditors by conveying the Oaklawn Property, by the circumstantial evidence apparent at the time of the transfer. *Roland v. United States,* 838 F.2d 1400, 1402–03 (5th Cir.1988) ("Since direct proof of fraud often is not available, courts may rely on circumstantial evidence to establish fraudulent intent."). In particular, they assert that certain "badges of fraud," listed in Tex. Bus. & Com.Code § 24.005(b) as indicative of intent to hinder, delay or defraud creditors, were present at the time: (1) that the transfer was to an insider, (2) that the Debtor retained control and possession of the property after the transfer and that the transfer was concealed, (3) that before the transfer the Debtor had been sued or threatened with suit and that the Debtor was insolvent at the time of the transfer, or became insolvent shortly thereafter, (4) that the transfer was of substantially all of the Debtor's assets, and (5) that the consideration received by the Debtor was not reasonably equivalent to the value of the Oaklawn Property. The Plaintiffs offer the following evidence to support such an inference of intent to hinder, delay or defraud creditors:

(1) It is undisputed that the transfer was to Edmiston, the Trustee of the Trust, the beneficiary of which was the Debtor's mother. *See* Plaintiffs' Exh. 4, the Blakley Trust Agreement. Edmiston was the Debtor's undisputed close friend, who worked with him in his business endeavors. *See* Porras's deposition, Plaintiffs' Exh. 11, pp. 64 ("I trust him [Edmiston] explicitly."), 82 ("Would you consider Mr. Edmiston like a brother?" "Yes."), 97–98 ("So '86 to '90, you spent a couple of years, maybe all those years, in Midland; and Mr. Edmiston was in Midland at the same time?" "Right." "Both in the 28 Oaklawn Property; is that correct?" "Right."); Plaintiffs' Exh. 3, Judge Furgeson's opinion, p. 1 ("The Trustee of the Trust is William Edmiston ..., a close personal friend of Mrs. Blakley and Porras and a long-time business associate of Porras."). The court thus finds that the transfer was made to an insider.

[At this point, the court notes that this finding, along with the Trust's and Blakley's contention that the transfer was in consideration of $235,000 previously loaned to Debtor (see discussion above), satisfy two of the elements of another cause of action pled by the Plaintiffs. Section 24.006(b) provides for avoidance of a transfer if made to an insider for antecedent debt, when the transferor is insolvent and

if the insider had reasonable cause to believe the transferor was insolvent. The Trust and Blakley did not dispute or offer any evidence on the other elements of this cause of action. However, the Plaintiffs *do* dispute that the transfer was made as a repayment of this alleged loan. In addition, the Trust and Blakley make other arguments about other consideration that they claim was received, in addition to or instead of the loan repayment. For both these reasons, the court finds that there is a disputed issue as to facts material to this cause of action, and therefore denies the Plaintiffs' Second Joint Motion for Partial Summary Judgment as to the Plaintiffs' action under § 24.006(b).]

(2) With respect to the Plaintiffs' cause of action for avoidance of the transfer as made with actual intent to defraud, hinder or delay creditors, there also does not appear to be any real dispute that the Debtor retained possession and control of the Oaklawn Property after the transfer. *See* Porras's deposition, Plaintiffs' Exh. 11, pp. 97–98 (he lived in the Oaklawn Property for some or all of 1986–1990); Plaintiffs' Exh. 16 (utility bill on Oaklawn Property showing the Debtor as the account holder in November and December of 1992); Plaintiffs' Exh. 17 (renewal of homeowners insurance policy Oaklawn Property showing the Debtor as the insured from April 14, 1994 to April 14, 1995, and showing endorsements dated in 1992 and 1993); Plaintiffs' Exh. 3, Judge Furgeson's opinion, pp. 32 ("After the conveyance [of the Oaklawn Property to the Trust], he still had full run of the home."), 47–48 ("Even if

Porras was living in New Mexico at the time of the seizure, the Oaklawn house was certainly his residence whenever he was in Midland."). By retaining possession and control, the court finds, the Debtor concealed the transfer from his creditors.

(3) There is also no dispute that the Oaklawn Property was transferred during the IRS's audit of the Debtor, immediately after the IRS gave Edmiston a questionnaire to be filled out regarding the Debtor's assets. *See* Plaintiffs' Exh. 1, trial testimony of Ms. Lewis of the IRS; Plaintiffs' Exh. 2, warranty deed transferring title to the Oaklawn Property. At the time, he already had a number of judgments against him. *See* Plaintiffs' Exh. 5, Porras's answers to interrogatories dated June 5, 1991, and Plaintiffs' Exh. 13, Porras's Schedules filed in his bankruptcy case, both showing judgments and debts unsatisfied at that time. The same evidence supports a finding, and the Defendants do not dispute, that Porras was insolvent at the time of the transfer, or that he was made insolvent by the transfer of the Oaklawn Property. The court therefore also finds that the element of insolvency is established for summary judgment purposes.

(4) The Plaintiffs also assert that the Oaklawn Property was Porras's last asset of any significant value.[8] The Defendants agree that it was the only residence owned by Porras at the time of the transfer. *See* Defendants' Response in Opposition to Plaintiffs' Second Joint Motion for Partial

---

8. As the Plaintiffs acknowledge, this contention assumes that the properties they claim the Debtor had previously transferred to the Trust (see the discussions below regarding the 100 Acres Remainder Interest and the Christie Property Trust Interest) should not be considered his assets at the time of the transfer of the Oaklawn Property. For purposes of considering this "badge of fraud," this court

agrees and will consider only assets that the Debtor held legal title to, or claimed to own. The previously transferred properties, as well as the personal property seized in the IRS's levy in November of 1994 and later found by Judge Furgeson to be Porras's property, would therefore not be considered as Porras's property at the time of the Oaklawn Property transfer.

Summary Judgment, p. 21. They provide no evidence to dispute that Porras had other property of value at that time. This court finds that for purposes of the Plaintiffs' request for summary judgment, there is no genuine issue with respect to the fact that the Oaklawn Property was the last significant asset owned by Porras at the time it was transferred to the Trust.

(5) Finally, the Plaintiffs contend that the transfer bore a "badge of fraud" in that the Debtor did not receive reasonably equivalent value for the Oaklawn Property. The evidence on reasonably equivalent value is discussed above at some length and for reasons already stated the court finds that the Plaintiffs have failed to meet their burden of proving that there is no genuine issue of material fact regarding receipt of reasonably equivalent value as a "badge of fraud."

Of course, for the court to infer a fraudulent intent, it is not necessary that *all* of the "badges of fraud" listed in Tex. Bus. & Com.Code § 24.005(b) and discussed in the case law on fraudulent transfers be present. *See Roland v. United States,* 838 F.2d 1400, 1403 (5th Cir.1988) (noting that "[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud."). However, considering the importance of the question of adequate consideration to the issue of intent, and the fact-intensive nature of the inquiry in general, this court is reluctant to find intent to hinder, delay or defraud as a matter of law without also finding that no reasonably equivalent value was received. Therefore, for this reason also the court will deny Plaintiffs' request for summary judgment on their cause of action under § 24.005(a)(1).

### Fraudulent Transfer of the 100 Acres Remainder Interest

The Plaintiffs seek to avoid, as constructively or actually fraudulent, what they allege was the transfer of Porras's remainder interest in 100 Acres of unimproved Collin County land (the "100 Acres Remainder Interest") to the Trust in September of 1988, under §§ 24.005(a)(1) and (a)(2), and 24.006(a).

The Trust and Blakley, in their Motion for Partial Summary Judgment, ask the court to grant them partial summary judgment denying the Plaintiffs' actions to avoid the alleged "transfer" of the 100 Acres Remainder Interest, for several reasons. First, they argue that all of the actions involving this property interest are barred as a matter of law by the statute of limitations contained in 11 U.S.C. § 546(a). The Plaintiffs respond that the doctrine of equitable tolling applies and tolls that statute. The Trust and Blakley also contend they are entitled to judgment as a matter of law on these causes of action because, they assert, the Debtor's interest was at most an unvested contingent remainder interest, and as such it cannot be the subject of a fraudulent transfer under the Texas statutes. Also because of its (alleged) unvested, contingent nature, the Trust and Blakley argue that the actions to avoid the "transfer" of the Debtor's interest are not "ripe" for adjudication and must therefore be dismissed.

Next, the Trust and Blakley challenge three of the elements of the Plaintiffs' causes of action. First, they contend that the Plaintiffs have not established as a matter of law that the Debtor had an interest in the subject property. Next they argue that, assuming the Debtor did have an interest, the Plaintiffs have not shown that the Debtor transferred that interest, because the transaction challenged—the entry by a state court in September of 1988 of an "Agreed Final Judgment"—did not operate to transfer an interest of the Debtor in property.

Third, the Trust and Blakley argue that the Plaintiffs have not shown, as a matter of law, that the Debtor received less than "reasonably equivalent value" in exchange for his 100 Acres Remainder Interest, because (1) the Debtor received an "absolute," present, undivided interest in certain property in exchange for both that contingent future remainder interest and his Christie Property Trust Interest, and because (2) the Debtor received from Blakley, during the 1950s or 1960s, approximately $250,000–$300,000 as his "inheritance," which she says was consideration for his transfer of the 100 Acres Remainder Interest and the Christie Property Trust Interest. (Both of these arguments on reasonably equivalent value are addressed at length below in the discussion regarding the alleged transfer of the Christie Property Trust Interest.)

Finally, the court addresses the Trust's and Blakley's contention, urged in their *Motion for Partial Summary Judgment*, that the Plaintiffs' fraudulent transfer actions with respect to the 100 Acres Remainder Interest should be dismissed because those actions are prohibited by the Rooker–Feldman Doctrine.

***Defensive Issue: Whether the actions are barred by the statute of limitations of Section 546(a).*** As a preliminary matter, the Trust and Blakley argue in their Motion for Partial Summary Judgment that the fraudulent transfer causes of action with respect to the 100 Acres Remainder Interest (as well as the Christie Property Trust Interest, discussed below) are time barred by § 546(a) of the Bankruptcy Code. That section provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> > (1) the later of—
> >
> > > (A) 2 years after the entry of the order for relief; or
> > >
> > > (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> >
> > (2) the time the case is closed or dismissed.

It is undisputed that the order for relief in this case was entered on May 3, 1995, when the Debtor filed his Chapter 7 petition, and that the initial Chapter 7 Trustee was appointed on May 4, 1995. 11 U.S.C. § 301 ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."); docket entry # 2 in Case No. 95–30583, Notice of Appointment of Interim Trustee, Andrew Krafsur.

The Trust argues that the Trustee did not bring these causes of action until he filed his Amended Complaint in June or July of 1999, more than two years after the deadline for bringing the action expired on May 2, 1997.[9]

---

9. The Motion to Amend, with a copy of the Amended Complaint attached was filed on May 22, 1998. *See* docket entry # 109. The Motion was granted at a hearing on June 2, 1999, and the Amended Complaint was then filed on June 4, 1999. Docket entry # 142. It was apparently refiled on July 6, 1999, after the Order Granting the Motion was entered on June 18, 1999. *See* docket entry # 147 (Amended Complaint) and # 146 (Order Granting Motion to Amend). Local Rule 7015(b) provides that "[t]he entry of the order authorizing leave to amend the pleading constitutes the filing date of the amended pleading." The Trust appears to have picked yet another date, June 3, 1999, as the date it contends the Amended Complaint was filed. Since all of these dates are well beyond the deadline for filing set forth in § 546(a), the court need not decide which date is the "filing" date for purposes of that section.

The Plaintiffs respond that the Original Complaint preserved these causes of action, which were then unknown and unknowable, because of the Debtor's, Edmiston's (as Trustee of the Trust), and Blakley's "stonewalling" tactics in response to discovery requests. The Plaintiffs further contend that the IRS's Complaint in Intervention, which was filed on July 8, 1997, also provides sufficient notice to the Trust that these causes of action would be asserted, so that there was no prejudicial delay. Specifically, the Original Complaint provides, in Paragraph 11 on page 14, "Due to stonewalling and minimal document production by the [sic] Porras and Edmiston, the Trustee has been unable to determine all of the transfers made by Edmiston and Porras that may be fraudulent. The Trustee will amend his complaint when he is able to receive and review more discovery." The Complaint in Intervention, ¶ 37, provides:

> The United States also contends and supports the trustee in his contention that the property, both real and personal, which is being held in the name of the Blakley Trust and the Support Trust is actually being held for the beneficial interest of David Porras and actually belongs to Porras and should be part of his bankruptcy estate. The United States further supports the Trustee's contention that the Property should be sold and the proceeds applied to paydown Porras' outstanding liabilities, including his liability to the Internal Revenue Service.

In essence, the Plaintiffs argue that, in equity, the statute of limitations in § 546(a) should be tolled because the causes of action had not, and could not have been discovered, in time to be timely asserted.

■ The purposes of statutes of limitation are to insure finality and to prevent the assertion of stale claims. *See generally United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ("Statutes of limitations … represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.").

■ However, statutes of limitation, including § 546(a), are subject to the doctrine of equitable tolling. *See e.g., In re M & L Business Machine Company, Inc.,* 75 F.3d 586, 591 (10th Cir.1996), citing *Ernst & Young v. Matsumoto (In re United Ins. Management, Inc.),* 14 F.3d 1380, 1385 (9th Cir.1994) (noting that every court that has considered this issue has held that equitable tolling applies to § 546(a)(1)); *see also In re Texas General Petroleum,* 52 F.3d 1330 (5th Cir.1995) (holding that § 546(a) is an "ordinary" statute of limitations that is not jurisdictional and can be waived). Equitable tolling will prevent § 546(a) from running when the trustee, despite the exercise of due diligence, is prevented from asserting a cause of action because she remains unaware of that cause of action due to fraud, or when "extraordinary circumstances beyond plaintiff['s] control made it impossible to file claims on time …." *M & L Business Machine,* 75 F.3d at 591, citing *Matsumoto,* 14 F.3d at 1385 and *Amazing Enters. v. Jobin (In re M & L Business Machs., Inc.),* 153 B.R. 308, 311 (D.Colo. 1993) (equitable tolling available while trustee appealed decision that she lacked standing to assert avoidance proceeding; initiation of avoidance action under those

circumstances would have been waste of time).

The extent to which a plaintiff used due diligence is measured by an objective standard; therefore a court may determine, as matter of law, that a trustee failed to exercise due diligence if uncontroverted evidence irrefutably demonstrates that plaintiff discovered or should have discovered fraud but, nonetheless, failed to timely file a complaint. *M & L Business Machine*, 75 F.3d at 591. That said, however, "tolling is ordinarily a fact-based inquiry . . . ." *Id.*, citing *Schwartz v. Kursman (In re Harry Levin, Inc.)*, 175 B.R. 560, 579 (Bankr.E.D.Pa.1994).

As the Plaintiffs have alleged, the record in this adversary proceeding as well as in the Debtor's bankruptcy case contain numerous indications of the Debtor's violation of his duty of disclosure and of his and the Trust's failure to cooperate in discovery. In particular, but by way of example only, the court notes in the main case the following filings:

Doc. # 78, Motion by The Lucille Christie Blakley Trust to Quash Subpoena to First National Bank In Alamogordo

Doc. # 79, Motion by Creditor The Lucille Christie Blakley Trust to Quash Subpoena to AA & T Escrow Company

Doc. # 80, Motion by Creditor The Lucille Christie Blakley Trust to Quash Subpoena to NationsBank

Doc. # 82, Motion by Creditor The Lucille Christie Blakley Trust to Quash Subpoena to Texas Commerce Bank

Doc. # 110, Decision and Order denying Doc. # 82, # 80, # 79, and # 78,

and the following filings in this adversary:

Doc. # 56, Blakley's motion to quash her deposition in this adversary;

Doc. # 60, Blakley's motion to quash the subpoena served on First Bank by the IRS;

Doc. # 64, the order denying # 60; and Doc. # 65, the order granting # 56.

Moreover, the court notes that the Debtor's and Blakley were both convicted of conspiracy to commit and aiding and abetting money laundering and bankruptcy fraud in connection with the Debtor's bankruptcy case. Plaintiffs' Exh. 27, 28. The court also generally notes Judge Furgeson's comments, in his lengthy opinion in support of the take nothing judgment on the Trust's and Blakley's claims against the IRS for wrongful levy, regarding the total lack of records produced by the Debtor, Blakley, and Edmiston, as well as their total lack of credibility regarding their claims to ownership of property. *See* Plaintiffs' Exh. 3.

In contrast, the Trust and Blakley have presented no summary judgment evidence, let alone "uncontroverted evidence irrefutably demonstrat[ing] that plaintiff[s] discovered or should have discovered" the facts supporting their causes of action to avoid the transfer of the 100 Acres Remainder Interest. Accordingly, the court finds that genuine fact issue exists on whether the Plaintiffs used due diligence in discovering these causes of action and, thus, whether the statute of limitations in § 546(a) should be equitably tolled. The Trust's and Blakley's Motion for Partial Summary Judgment will therefore be denied with respect to their affirmative defense that the actions to avoid the transfer of the 100 Acres Remainder Interest as fraudulent are barred by the statute of limitations in § 546(a). The issue remains to be decided upon a trial on the merits.

***Defensive Issue: Whether a contingent remainder can be the subject of a fraudulent transfer.*** The court addresses below the Trust's and Blakley's argument that the Plaintiffs have failed to establish for summary judgment purposes that the

Debtor actually owned the 100 Acres Remainder Interest at time of the alleged transfer. The Trust and Blakley also argue that, even if the Debtor did hold that interest at that time, it was merely an unvested contingent remainder, and so is not an interest that is subject under Texas law to being fraudulently conveyed.[10]

For purposes of this argument, the Trust and Blakley agree with Plaintiffs' contention that the Debtor's interest, if he had one, derived from the will of his grandfather, Blakley's father. This much appears to be undisputed. D.P. Christie died on February 11, 1950. Under his will, Blakley received a life estate (subject to a life estate granted to the testator's wife) in real estate that included the 100 Acres. Plaintiffs' Exhibit 7, Bates stamp pages 4, 5. The will further provides:

> At the death of my beloved daughter, Lucile Poris [n/k/a Blakley], all of the land hereinabove described ... shall pass to and vest in her child, children, or their descendants, absolutely and in fee simple, provided however, that if the said Lucile Poris[, ...] having taken said life estate under will, should then die without leaving child, children, or their descendants, then said lands shall pass to my children who may then survive the said Lucile Poris, to be enjoyed by them for and during their natural lives, share and share alike, and upon the death of the last to die, the said lands shall pass to and vest in my grandchildren, or their descendants, absolutely, and in fee simple.

The Trust and Blakley argue that this language created in the Debtor an unvested, contingent remainder, since he must have survived his mother to take. They cite in support *Volkmer v. Chase,* 354 S.W.2d 611 (Tex.Civ.App.—Houston 1962, writ denied) and *Wilkes v. Wilkes,* 488 S.W.2d 398 (Tex.1972) and *Turner v. Adams,* 855 S.W.2d 735 (Tex.App.—El Paso 1993, no writ). Relying on *In re Hicks,* 22 B.R. 243 (Bankr.N.D.Ga.1982), they claim that since the interest is contingent and unvested, even if recovered by the Trustee it would not be property of the Debtor's estate and would not be subject to creditor's claims.

The court analyzes the language of the Debtor's grandfather's will in this case under Texas law. That law shows that the Trust's and Blakley's reliance on the cases they cite disregards long-established rules of construction applied to wills in this state.

First, "Texas law favors a construction that allows vesting at the earliest possible time, and Texas courts will not construe a remainder as contingent when it can reasonably be taken as vested." *McGill v. Johnson,* 799 S.W.2d 673, 675 (Tex.1990), citing *Chadwick v. Bristow,* 146 Tex. 481, 208 S.W.2d 888, 891 (1948) and *Pickering v. Miles,* 477 S.W.2d 267, 270 (Tex.1972).

Second, the mere fact that the Debtor's grandfather's will stated that the property would "pass to and vest" in the Debtor upon his mother's death does not,

---

**10.** The Trust and Blakley also state in their Response to the Plaintiffs' Motion for Partial Summary Judgment that if there was a transfer of the 100 Acres Remainder Interest, because it was made (as discussed below) as a result of the entry of an agreed judgment in a state court suit, it was not a voluntary transfer as (they assert) is required under TUFTA. They cite no authority for this alleged requirement, and the court is unaware of any. Section 24.002(12) of TUFTA in fact expressly provides that " '[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or *involuntary,* of disposing of or parting with an asset or an interest in an asset ...." (Emphasis added.) The court therefore rejects this argument.

in itself, determine that vesting occurred upon her death. Such language is "usually found in instruments creating remainders universally held to be vested [immediately upon the testator's and not the life tenant's death], and not contingent.... The use of 'at his death' or words of similar import denote the time when the right of possession and enjoyment of the estate begins, and not the time when the estate in remainder vests." *Rust v. Rust,* 147 Tex. 181, 190, 211 S.W.2d 262, 267 (Tex.Civ. App.—Austin), *aff'd,* 147 Tex. 181, 214 S.W.2d 462 (Tex.1948).

█ Finally, "under Texas' rules of construction, if a condition precedes or is incorporated into the gift of the remainder, it is a condition precedent; but if the condition is added after a vested gift is made, the remainder is vested subject to divestment." *McGill,* 799 S.W.2d at 675, citing *Pickering,* 477 S.W.2d at 270 (Tex. 1972).

Using these principles, the court in *McGill* addressed language in a will and held it to create a vested remainder subject to a condition subsequent. Its analysis shows the same result is appropriate under the Debtor's grandfather's will in this case.

In *McGill,* the court noted: "the gift language, 'remainder over ... at the death of my son ... unto my sisters,' is followed by a separate clause containing the conditional language, 'in case either of my sisters then be deceased such remainder ... shall pass per stirpes to her then living direct lineal descendants.' Under the rules of construction, this clause clearly creates a vested remainder subject to a condition subsequent." *McGill,* 799 S.W.2d at 675.

In this case, the gift language "[a]t the death of my beloved daughter ... the land ... shall pass to and vest in her child, children, or their descendants," is also followed by a separate clause containing the conditional language, "if the said Lucile Poris ... should then die without leaving child, children, or their descendants, then said lands shall pass to my children who may then survive ...."

In an earlier case that is similar to *McGill,* the Texas Supreme Court held that the deceased remainderman (John Gerald Power) had received a vested remainder that was divested upon his death, under this language found in the will:

Upon her death, any of such estate then remaining, shall be divided among the persons following, share and share alike, to-wit:

Thelma Landram

John Gerald Power

Katherine Power Randle

the said named persons being the children of said John A. Power and Mary Elizabeth Power; and in case any of said children should die before the death of my beloved wife, Mary Elizabeth Power, Then the share which would have come to such child shall pass under the laws of descent and distribution to the heirs of such deceased child.

*Power v. Landram,* 464 S.W.2d 99, 100 (Tex.1970). *See also Turner v. Adams,* 855 S.W.2d 735, 738, 738 n. 4 (Tex.App.— El Paso 1993, no writ) (holding that a vested and not a contingent remainder was created where the aunt's will conveyed "the remainder to her 'nieces and nephews, equally' and *then,* add[ed] the clause addressing survivorship," and distinguishing language such as "to my nieces and nephews *who survive my husband*" as clearly creating a contingent remainder).

█ This court finds the *McGill* and *Power* cases instructive, if not controlling, and therefore finds that the interest at issue is a vested remainder subject to a

condition subsequent.[11] As a vested remainder, even if subject to divestment, it would have been property of the estate if held by the Debtor on the petition date, and so a transfer of the 100 Acres Remainder Interest that met the requirements of TUFTA would be avoidable as a fraudulent transfer.

Even assuming that what the Debtor received through his grandfather's will was only a contingent remainder interest, this court finds that it would still have been property of the estate:

> There is no question that Section 541 encompasses contingent interests held by a debtor as of the debtor's bankruptcy filing. However, the Fifth Circuit has explained that whether a debtor's interest in property becomes property of the bankruptcy estate is a function of whether the debtor had an interest, whether legal or equitable, in property cognizable under applicable state law. *Matter of Missionary Baptist Foundation*, 792 F.2d 502, 505 (5th Cir.1986) ("The nature and extent of the debtor's interest in property is analyzed by reference to the applicable state law, here, that of Texas."). Thus, only those contingent interests in property which are recognized under state law become property of the estate.

*In re Swift*, 198 B.R. 927, 931–32 (Bankr. W.D.Tex.1996).

11. The Trust and Blakley also argue that, if the Agreed Judgment in fact "divested" the Debtor of his 100 Acre Remainder Interest and his remainder interest in his aunts' properties, it should be considered the equivalent of a "disclaimer of an inheritance" under Texas law and, like a disclaimer, cannot be a transfer within the meaning of TUFTA. This argument is discussed below in detail with regard to the Christie Property Trust Interest. Because the Trust and Blakley have not made the argument a basis for their request for

Under Texas law, a contingent interest in property may be transferred. *See e.g., Gottwald v. Warlick*, 125 S.W.2d 1060 (Tex.Civ.App.—San Antonio 1939, no writ) ("A mere expectancy of inheritance, or remainder of a defeasible estate, may be assigned, and a regular conveyance thereof is valid and will be upheld, unless fraudulently procured ...."); *see also Burges v. Gray*, 211 S.W.2d 776, 777 (Tex. Civ.App.—San Antonio 1948,) ("In Texas it seems well settled that the conveyance of an expectancy, of a prospective heir is valid and enforcible.... A conveyance of an interest which one may receive under a will is likewise enforcible."), citing *Hale v. Hollon*, 90 Tex. 427, 39 S.W. 287 (1897); *Barre v. Daggett*, 105 Tex. 572, 153 S.W. 120 (1913); *Hammett v. Farrar*, 29 S.W.2d 949 (Tex. Comm'n App.1930); *Gottwald, supra; Jenkins v. Adcock*, 5 Tex.Civ.App. 466, 27 S.W. 21 (1893). This court therefore finds that in Texas, a contingent remainder is "an interest ... in property cognizable under applicable state law."

Although determination of the extent and nature of a debtor's interest in property is a matter of state law, the question whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

> "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is

summary judgment, and in light of this court's finding and conclusion below that the Plaintiffs have failed to prove, for summary judgment purposes, that there was a transfer of the 100 Acres Remainder Interest, the court need not address the "disclaimer" argument with respect to this property. The court notes, however, that it can think of no reason why its analysis would differ from that set forth below with regard to the Christie Property Trust Interest.

novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (bankruptcy estate includes right to refund). In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541. *In re Anderson*, 128 B.R. 850, 853 (D.R.I.1991). *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993). *See also In re Knight*, 164 B.R. 372 (Bankr.S.D.Fla.1994) (holding that the debtor's interest in the corpus of a trust, of which his mother was the beneficiary, was property of his estate even though the debtor could be divested of that interest if he predeceased his mother). This court finds that, as a property interest recognized under Texas law, even a contingent remainder held by a debtor on the petition date would become property of the debtor's estate.[12]

Based on all of the foregoing, the court finds that the nature and extent of the 100 Acres Remainder Interest was sufficient to have been property of the estate had the Debtor held that interest as of the petition date. The court therefore finds and concludes that the Trust's and Blakley's Motion for Partial Summary Judgment, to the extent it asks for dismissal of the Plaintiffs' actions because of the nature of the 100 Acres Remainder Interest, should be denied.

*Defensive Issue: Whether, because of the contingent nature of the 100 Acres Remainder Interest, the Plaintiffs' cause of action is not "ripe" for adjudication.* The court's conclusion above, that the nature and extent of the 100 Acres

Remainder Interest was sufficient to have been property of the estate had the Debtor held that interest as of the petition date, also disposes of the Trust's and Blakley's legal argument in their Motion for Partial Summary Judgment that the fraudulent transfer actions should be dismissed because they are not "ripe," since the Debtor's interest was unvested and contingent. The court therefore also denies those grounds for relief in the Trust's and Blakley's Motion.

■ *Plaintiffs' Elements: Whether the Debtor had an interest in property and whether he transferred that interest.* The Plaintiffs present undisputed summary judgment evidence of their fraudulent transfer causes of action with respect to the 100 Acres Remainder Interest as to all but three elements. Two of those three elements are: that the Debtor had an interest in property and that the Debtor transferred that interest. As these two arguments are intertwined in the briefing, the court will address them together. *See* Response to the Plaintiffs' Second Joint Motion for Partial Summary Judgment, pp. 22–23. The third disputed element, whether the Debtor received reasonably equivalent value, will be separately addressed later.

The history of the title to the 100 Acres appears to be convoluted and confusing, to say the least. The Plaintiffs attempt to describe the chain of title in their Second Joint Motion for Partial Summary Judgment, in pages 5–7. However, they provide no evidentiary basis for several of the transactions they claim are part of that chain of title, and rely only on allegations in pleadings for others. *See* Second Joint

---

**12.** At most, the contingent nature of the asset would affect its value. *See generally In re Hannover Corp.*, 310 F.3d 796, 802 (5th Cir. 2002), *cert. denied*, 538 U.S. 1032, 123 S.Ct. 2075, 155 L.Ed.2d 1060 (2003) (short-term call options were not without "value" simply because there was no chance that debtor, who used options to facilitate *Ponzi* scheme, would exercise options).

Motion for Partial Summary Judgment, ¶¶ 3, 5–9, and Plaintiffs' Exhs. 8 and 9.

The Plaintiffs go on to assert that Porras transferred this remainder interest when, they claim, the Blakley Trust appears in late 1988 as owner of record of the entire fee interest in the 100 Acres. The Plaintiffs do not themselves cite any evidence of this "transfer" or indeed of the Trust's title to the property. *See* Second Joint Motion for Partial Summary Judgment, page 7, (runover) para. 8 (unsupported statement that "[i]n 1988 when Porras, Blakley and Edmiston created the Blakley Trust, the entire 100 Acres was placed in the name of the Blakley Trust.").

What evidence there is on the issue is offered by the Trust and Blakley. In September of 1988, an "Agreed Final Judgment" was entered in *Hays vs. Lowrey, et al.,* No. H86–473–296, filed in the 296th Judicial District Court of Collin County, Texas (the "Agreed Judgment"). The Agreed Judgment provides as follows:

> [T]he terms and conditions of the trust created pursuant to the Lucille Lawsuit [i.e., *Sinclair v. Hays, et al.,* No. 31615, in the 59th Judicial District Court of Collin County] ("The Blakley Trust") are hereby restated in their entirety as set forth in the instrument entitled "Trust Instrument for the Blakley Trust" labeled *Exhibit "D,"* and attached hereto and incorporated herein by reference .... NCNB Texas National Bank (the "Prior Trustee") is hereby removed as trustee of the Blakley Trust and William H. Edmiston is hereby appointed as successor trustee of the Blakley Trust, to serve until such time as he resigns or otherwise ceases to serve .... The Prior Trustee is ... hereby ordered to deliver to William H. Edmiston, Trustee, all remaining cash and

other property now held by it as trustee of the Blakley Trust, as show upon *Exhibit "E"* attached hereto and incorporated herein by reference, including, but not limited to the real property (herein called the "LUCILLE PROPERTY") listed on *Schedule A* to *Exhibit "D"* hereof, .... The delivery of the LUCILLE PROPERTY shall be by the form of conveyance attached hereto and made a part hereof for all purposes as *Exhibit "F"* ....

Defendants' Exh. 2, pp. 7–8.

The list of property on Exhibit "E," which the Agreed Judgment describes as "all remaining cash and other property *now held by [the Prior Trustee] as trustee of the Blakley Trust*" (emphasis added), includes "100.427 acres located in the Henry Slack Survey, Collin County, Texas"— i.e., the 100 Acres, apparently in fee and not limited to any life estate. In addition, the form of the trust instrument attached as Exhibit "D" also refers to the 100 Acres as having been held by the Blakley Trust prior to the Agreed Judgment: "All of the funds, securities and other properties received by the Trustee from First Republic-Bank Dallas, N.A. as the prior Trustee, including the real property described upon *Schedule A* attached hereto ...." Schedule A contains the legal description of the 100 Acres, not limited to any life estate interest.

The Trust and Blakley contend, and the court agrees, that these recitations, rather than showing that a transfer of the Debtor's interest was made, tend to show only that the 100 Acres was owned in fee simple by the Blakley Trust (or its predecessor trust) even prior to the restatement of the Trust in September of 1988 under the Agreed Judgment.[13] The Plaintiffs do allege that Porras had a remainder interest

---

13. They are not conclusive of the issue, however, because as a consent judgment the

Agreed Judgment has no res judicata effect. *See Arizona v. California,* 530 U.S. 392, 120

in an earlier trust (the David Porras et al. Trust), but offer no summary judgment evidence of that fact. *See* Amended Complaint, p. 5, ¶¶ 6–7. Thus, these provisions of the Agreed Judgment present a fact issue as to whether the Debtor held an interest and, if so, transferred it, when the Trust was restated in September 1988.

Although it is not clear that the Plaintiffs make the argument (as they do regarding the Christie Property Trust Interest discussed below), the Trust and Blakley assume the Plaintiffs contend that the Debtor effectively transferred his 100 Acres Remainder Interest by agreeing to its termination with the entry of the Agreed Judgment. There is some language to that effect in the Agreed Judgment:

> All parties to this suit, whether Plaintiff or Defendant, adult, minor, or unborn, shall no longer have any right, title or interest in or to any of the ... LUCILLE PROPERTY ... and all are hereby divested of all such right, and interest, if any, receiving therefore beneficial interests in the various trusts created by this Judgment as consideration for the Court's divestiture of such title and placing of such title in the Trustee[ ] of the ... Blakley Trust as herein specified.

Defendants' Exh. 2, page 8.

However, there is no finding or even mention in the Agreed Judgment that the Debtor in particular claimed any interest in the 100 Acres when the suit was brought.[14] Rather, as discussed above, the language of the Agreed Judgment and the attachments tend to show that the Debtor no longer had any interest at that time. While that is not conclusive because of the consensual nature of the Agreed Judgment (see discussion above at footnote 13), with no other evidence that the Debtor had any interest at the time the Agreed Judgment was entered, its language "divesting" him of any interest is analogous to that of a quitclaim deed—it cannot transfer an interest if it did not exist, and it is insufficient to show that an interest did exist.

In short, for purposes of their summary judgment, the Plaintiffs have failed to show that the Debtor had an interest in the 100 Acres at the time the Trust was restated and the Agreed Judgment was entered. Since the entry of the Agreed Judgment and the restatement of the Trust is the only transaction cited by Plaintiffs in connection with the transfer, they have also failed to meet their burden of proving that the Debtor transferred an interest in the 100 Acres. For these reasons, the Second Joint Motion for Partial Summary Judgment should therefore be denied as to the actions to avoid fraudulent transfer of the 100 Acres Remainder Interest.

### Plaintiffs' Element: Whether the Debtor received less than "reasonably

S.Ct. 2304, 2309, 147 L.Ed.2d 374 (2000), supplemented by 531 U.S. 1, 121 S.Ct. 292, 148 L.Ed.2d 1 (2000).

**14.** The form of the trust instrument does describe the 100 Acres as one of two tracts of land that were the subject of the previous "Lucille Lawsuit," "which had theretofore been set aside to Lucille Christie Blakley during the term of her natural life with remainder as provided in Item IV, subdivision (B) of the Last Will of D.P. Christie, Sr., Deceased." The verb tense in this recitation, in addition to the subsequent history of the property that follows it, causes this court to read it as referring to some unspecified time in the past, and to consider it as not probative of whether the Debtor at the time of the Agreed Judgment claimed any remainder interest in the 100 Acres.

The fact that the Debtor was made a party to the suit is insufficient; he could just as well have been brought into the suit because he claimed an interest in some *other* property that was the subject of the suit.

*equivalent value" in exchange for his 100 Acres Remainder Interest.* The other element that the Trust and Blakley challenge is whether adequate consideration, or reasonably equivalent value, was given for Porras's alleged 100 Acres Remainder Interest. This issue is addressed at length below in the section discussing the Christie Property Trust Interest; however, the court notes that, in light of its ruling that the Plaintiffs have failed to meet their summary judgment burden of proof on the property interest and transfer elements, a ruling on the element of value received is not necessary with respect to the 100 Acres Remainder Interest at this time.

■ *Defensive Issue: Whether the Plaintiffs' fraudulent transfer actions with respect to the 100 Acres Remainder Interest are prohibited by the Rooker–Feldman Doctrine.* After making the assumption that the Plaintiffs are challenging the Agreed Judgment in their fraudulent transfer actions concerning the 100 Acres Remainder Interest, the Trust and Blakley also respond that such an attack on a final state court judgment is prohibited by the Rooker–Feldman Doctrine and ask in their Motion for Partial Summary Judgment that the Plaintiffs' actions be dismissed on that basis.

The Trust and Blakley cite *U.S. v. Shepherd,* 23 F.3d 923 (5th Cir.1994) in support of their argument. The Court there explained:

> The *Rooker/Feldman* doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on state judgments. . . . A federal complainant

cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief. If the district court is confronted with issues that are "inextricably intertwined" with a state judgment, the court is "in essence being called upon to review the state-court decision," and the originality of the district court's jurisdiction precludes such a review.

■ In a decision issued after the parties filed their briefs in this matter, *In re Erlewine,* 349 F.3d 205 (5th Cir.2003), the Fifth Circuit Court of Appeals elaborated, noting that "the *Rooker–Feldman* bar generally should not extend to state decisions that would not be given preclusive effect under doctrines of res judicata and collateral estoppel." [15] Applying those principles to facts similar to those here, the court held that a bankruptcy trustee's fraudulent transfer action was not an impermissible attack, under the Rooker–Feldman Doctrine, on a prior state court divorce judgment dividing the debtor's and her ex-husband's property. The Court reasoned that Texas rules on res judicata and collateral estoppel did not preclude the trustee's suit, because the trustee was not a party to the divorce proceedings nor was he in privity with any party. *Id.* at 210. For two parties to "in privity" they must "share an 'identity of interest in the basic legal right that is the subject of the litigation.'" *Id.,* quoting *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996). Even though a bankruptcy trustee is a successor of the bankrupt debtor for many purposes, he is much more than that, as a

---

15. The *Erlewine* Court acknowledges that the Rooker–Feldman Doctrine is not simply coextensive with traditional preclusion doctrine, and cites 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4469.1 (2d ed.2002), for a

description of the subtle differences between the two bodies of law. *Id.* at 210 n. 4. As did the *Erlewine* Court, this court "conclude[s] only that in this case both doctrines are inapplicable for the same reason." *Id.*

representative of the debtor's creditors and considering the extraordinary rights he is given under the Bankruptcy Code. *Erlewine*, 349 F.3d at 210, citing *Coleman v. Alcock*, 272 F.2d 618, 621–22 (5th Cir. 1959).

In this case, neither the Trustee nor the IRS were parties in the suit that resulted in the Agreed Judgment. The interests of the creditors being represented by the Trustee in a fraudulent transfer action were not represented in that earlier suit, and so neither Plaintiff was in privity with a party to that suit. Therefore, the Plaintiffs' fraudulent transfer actions are not barred by collateral estoppel or res judicata.[16]

The court therefore finds that the Trust's and Blakley's Motion for Partial Summary Judgment should be denied to the extent it requests dismissal of the Plaintiffs' causes of action as barred by the Rooker–Feldman Doctrine.

### The Christie Property Trust Interest

As with the 100 Acres Remainder Interest, the Plaintiffs also seek to avoid, as constructively or actually fraudulent under §§ 24.005(a)(1) and (a)(2), and/or 24.006(a), the alleged transfer(s) to the Trust of Porras's remainder interest in certain property that, under the Agreed Judgment, was contributed to the Christie Property Trust.

Specifically, the Plaintiffs allege, and the Trust and Blakley do not dispute, that under Porras's grandfather's will the Debtor and his cousins were granted a remainder interest under certain conditions in certain property in which his two aunts, Agnes and Audrey, were granted life estates. *See* Plaintiffs' Exh. 7. The parties also do not dispute that, because that remainder interest was to be shared by Porras and the other grandchildren, his fractional interest (1/7th) would be determined by the number of his cousins (seven) who share such remainder. The 1/7th remainder interest that Porras allegedly held prior to the entry of the Agreed Judgment is referred to herein as his "Christie Property Remainder Interest."

Also not disputed is the fact that under the Agreed Judgment entered in September of 1988, the Christie Property Trust was created, and the assets contributed to that trust included Porras's Christie Property Remainder Interest.[17] The Plaintiffs

---

**16.** In addition, as discussed above, settlements and agreed judgments generally are not given res judicata effect. *See Arizona v. California*, 530 U.S. 392, 120 S.Ct. 2304, 2309 (2000), supplemented by 531 U.S. 1, 121 S.Ct. 292, 148 L.Ed.2d 1 (2000) (consent judgment has no res judicata effect).

**17.** As with the 100 Acres Remainder Interest, discussed above at pages 26 and 31–33, the Plaintiffs have recited a much more complicated history of the title of the Christie Property Remainder Interest from the time the will became effective and the time the Agreed Judgment was entered. As with the 100 Acres Remainder Interest, the Plaintiffs have not provided competent summary judgment evidence of most of that history. However, the Trust and Blakley have not disputed that the Debtor acquired this interest under his grandfather's will, or what the nature of this

interest was (except as it relates to the legal consequences of the alleged transfer of this interest under the Agreed Judgment).

In addition, their only challenge with respect to the Debtor's title at the time the Agreed Judgment was entered is an argument regarding the Debtor's cousins' rights to those interests. *See* the Trust's and Blakley's Motion for Partial Summary Judgment, p. 14 ("Assuming the adoptions were invalid, as the Bankruptcy Trustee must to advance his claim to the CPT Interest, the Agnes and Audrey Properties would have passed pursuant to Christie's Will—first to Christie's living children, which, at this point, is only Mrs. Blakley, in life estate, with the contingent remainder to Christie's grandchildren."). Inasmuch as the court rejects the argument regarding the cousins' title (see discussion below), there appears to be no real dispute

in essence argue that by virtue of his alleged pre-judgment interest, Porras was entitled to 1/7 residual interest in that trust (the "Christie Property Trust Interest"), and that a fraudulent transfer occurred when, under the terms of the Agreed Judgment, Porras received nothing in his own name and the Trust received 75% of the Christie Property Trust Interest (the 75% Portion)." Also under the Agreed Judgment, HWD Corporation received 25% of the Christie Property Trust Interest (the "25% Portion"). The Plaintiffs assert that HWD is merely the alter ego of the Debtor, and so the 25% Portion was actually granted to the Debtor under the Agreed Judgment. Therefore, according to the Plaintiffs' position, by the entry of the Agreed Judgment, the Debtor "relinquished" his entire Christie Property Remainder Interest, and/or his claim to the Christie Property Trust Interest, in exchange for only the 25% Portion. The Plaintiffs challenge that "relinquishment" as a fraudulent transfer. Alternatively, if the court finds that HWD is a separate, legitimate legal entity and not the alter ego of Debtor, the Plaintiffs' position would include a request to also avoid HWD's receipt of the 25% Portion as a fraudulent transfer.

In response, the Trust and Blakley dispute only two of the elements of the Plaintiffs' causes of action: that there was a transfer of an interest of the Debtor in property, and that, if there was a transfer, the Debtor did not receive reasonably equivalent value for that interest.

Finally, the Trust and Blakley in their own Motion for Partial Summary Judg-

ment also contend that they are entitled to dismissal of the Plaintiffs' fraudulent transfer actions for a number of reasons, including: the absence of a necessary party, the statute of limitations, the absence of a "ripe" controversy, the Rooker–Feldman Doctrine, and that either (a) the Debtor had no interest to transfer because his cousins held that interest at the time of the Agreed Judgment, or (b) if there was a transfer of the Debtor's property, it was not the sort that TUFTA can avoid, because it was not voluntary.

***Defensive Issue: Whether Blakley is a necessary party.*** The Trust and Blakley have asserted in their Response to the Trustee's and IRS's Second Motion for Partial Summary Judgment that summary judgment must be denied as to the actions to avoid and recover either or both the 75% Portion and the 25% Portion, because on September 27, 1997, after the Trust received those interests, it transferred them to Blakley individually. Therefore, the Trust and Blakley argue, she is a necessary party and her absence as a party to this suit precludes the relief the Plaintiffs seek.[18]

Federal Rule of Civil Procedure 19(a), incorporated by Federal Rule of Bankruptcy Rule 7019, provides in pertinent part:

**Rule 19. Joinder of Persons Needed for Just Adjudication**

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's

---

that the Debtor was entitled to a 1/7th contingent remainder interest in his aunts' properties at the time the Agreed Judgment was entered (unlike the 100 Acres Remainder Interest, the Debtor's ownership of which, as discussed above, *is* disputed by the Trust and Blakley).

**18.** This argument is *not* advanced in the Trust's and Blakley's Motion for Partial Summary Judgment. Neither have the Trust and Blakley filed any separate motion to dismiss on these grounds.

absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

 Dismissal is not the primary remedy for failure to join a necessary party. *Keene v. Hale–Halsell Co.*, 118 F.2d 332 (5th Cir.1940). Rather, if in fact Blakley is the current owner of the Christie Property Trust Interest, it may be that she should be joined as a "person [who] claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest ...." Fed.R.Bankr.P. 7019. There is no precise formula for determining whether a nonparty should be joined under the federal mandatory joinder rule; instead, the determination depends on the particular facts and circumstances of the case. *In re Home America T.V.–Appliance–Audio, Inc.*, 193 B.R. 929 (D.Ariz. 1995), *on subsequent appeal*, 232 F.3d 1046 (9th Cir.2000), *cert. denied, Shaltry v. U.S.*, 534 U.S. 814, 122 S.Ct. 39, 151 L.Ed.2d 12 (2001).

The general rule is that a subsequent purchaser of disputed property should be joined. *Chiodo v. General Waterworks Corp.*, 380 F.2d 860 (10th Cir.), *cert. denied*, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967). *See also Genova v. Champion*, 33 B.R. 930 (Bankr.D.Colo.

1983) (the transferees as parties in interest and as "the then title holders" must be named as party defendants in an action to set aside fraudulent transfers). *But see In re Claxton*, 30 B.R. 199 (Bankr.Va.1983), where the court held in a fraudulent transfer action that full relief could be accorded and the rights of the subsequent purchaser of the property protected, where the court's order did not decide issues regarding the validity of that party's interest in the property, but only voided the transfer by, and placed title back in, (the receiver for) the debtor; the subsequent transferee would have the opportunity to defend her title in a separate action.

Whether Blakley is a necessary party depends upon, among other things, whether she is in fact the current owner of the property. In support of their claim that she is, and that the Christie Property Trust Interest is no longer held by the named Defendant (the Trust) in this case, the Trust and Blakley offer Defendants' Exh. 6, a copy of an Assignment, dated September 27, 1996 and recorded September 30, 1996, by the Trust to Blakley of all of the Trust's interest in the Christie Property Trust.

In response, the Trustee argues that "serious questions exist as to the validity of the purported transfer between the Blakley Trust and Blakley ...." Joint Reply to Response in Opposition to Plaintiffs' Second Joint Motion for Partial Summary Judgment, p. 11, para. 26. In so arguing, the Trustee admits that this issue is the subject of a factual dispute.

 However, at best this issue is material only to the Plaintiffs' right to recover the property itself. If in fact the property at issue was validly transferred from the Trust to Blakley, the Trustee may nevertheless recover a money judgment against the Trust as the initial transferee of a fraudulent transfer, without join-

ing an intermediate or mediate transferee such as Blakley would be. *See* 11 U.S.C. § 550 ("the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property"); *see e.g., In re Furley's Transport, Inc.*, 272 B.R. 161 (Bankr. D.Md.2001) (money judgment awarded against initial transferee for value of trailers transferred, without joinder of subsequent transferees); *Tidwell v. Chrysler Credit Corporation (In re Blackburn)*, 90 B.R. 569 (Bankr.M.D.Ga.1987) (money judgment for the value of truck awarded, without joinder of subsequent transferee); *In re Lindley*, 121 B.R. 81 (Bankr. N.D.Okla.1990) (initial transferees and immediate transferees, who no longer held stock they acquired directly or indirectly from Chapter 7 debtor in fraudulent conveyances and transfers, would be ordered to pay trustee value of stock). Whether to order payment of the value of property which is the subject of an avoided transfer, rather than a return of property itself, is matter within the bankruptcy court's discretion. *In re Centennial Textiles, Inc.*, 220 B.R. 165 (Bankr.S.D.N.Y.1998); *accord, In re International Ski Service, Inc.*, 119 B.R. 654 (Bankr.W.D.Wis.1990).

Accordingly, the court finds that there is a genuine issue of disputed fact regarding the subsequent transfer of the Christie Property Trust Interest and the necessity of joining the purported transferee, and that such issues (1) are material with respect to each of the Plaintiffs' causes of action that seek recovery of that property itself, but (2) are not material with respect to all other causes of action asserted by the Plaintiff. Therefore the Plaintiffs' request for summary judgment is denied as to all those causes of action that seek recovery of the Christie Property Trust Interest itself. In the interest of justice and judicial economy, the court will enter an order permitting the Plaintiffs a period

of twenty days to amend their Complaint to join Blakley if they so desire, providing that Blakley's answer is due within 30 days of issuance of the summons on her, and further providing that no additional time for discovery, and no additional dispositive motions, may be filed.

***Defensive Issue: Whether the Plaintiffs' fraudulent transfer actions with respect to the Christie Property Trust Interest are barred by the statute of limitations of Section 546(a).*** The Trust and Blakley argue in their Motion for Partial Summary Judgment that the fraudulent transfer causes of action with respect to the Christie Property Trust Interest, like the 100 Acres Remainder Interest, are time barred by § 546(a) of the Bankruptcy Code. As discussed above in the section regarding this defense to the actions to avoid the transfer of the 100 Acres Remainder Interest, the court finds that genuine fact issues exist regarding whether the Plaintiffs used due diligence to discover these causes of action and, thus, whether the statute of limitations in § 546(a) should be equitably tolled.

The Trust's and Blakley's Motion for Partial Summary Judgment is therefore denied with respect to their affirmative defense that the actions to avoid the transfer(s) of the Christie Property Trust Interest as fraudulent are barred by the statute of limitations in § 546(a).

***Plaintiffs' Elements: Whether the Debtor had an interest in property and whether there was a transfer of that interest.*** In their Response to the Plaintiffs' Second Motion for Partial Summary Judgment, the Trust and Blakley contend that, for a number of reasons, Plaintiffs have not shown that the Debtor had a property interest and that there was a transfer of that interest with respect to the

action to recover the Christie Property Trust Interest.[19]

■ First, the Trust and Blakley raise a factual issue of whether the Debtor or his cousins owned the Christie Property Trust Interest in question at the time the Agreed Judgment was entered. This issue is also raised in their Motion for Summary Judgment. In summary, the Trust and Blakley point out that, under Porras's grandfather's will, the properties in question were originally left to Porras's two aunts as life estates, with remainder interests to their children. Plaintiffs' Exh. 7, ¶¶ IV.A., IV.D. This arrangement is exactly the same as the will's terms regarding the 100 Acres Remainder Interest: Blakley was granted a life estate with the remainder going to Porras as her child. Plaintiffs' Exh. 7, ¶ IV.B. In the case of Porras's two aunts Agnes and Audrey, they had no children by birth. This fact is not in dispute. The will provided that if there were no children the remainder would be shared by all the grandchildren—hence, Porras's claim to a 1/7th interest in the properties that were subject to his aunts' life estates. Plaintiffs' Exh. 7, ¶¶ IV.A., IV.D.

The Trust and Blakley argue that Agnes and Audrey each adopted one of Porras's adult cousins, qualifying each of those two cousins as the aunt's "child" for purposes of the grandfather's will, entitled to entire remainder, and thus "divesting" Porras and the other grandchildren of any interest in the remainder. The fact and validity of these adoptions is disputed by the Plaintiffs. See Joint Response in Opposition to the Blakley Trust and Lucille Christie Blakley's Motion for Partial Summary Judgment, p. 9.

As summary judgment proof of these facts (both in their Response to the Plaintiffs' Motion, and in their own Motion for Partial Summary Judgment), the Trust and Blakley offer only the deposition testimony of Blakley.[20] See Defendants' Exh. B. That testimony is extremely brief, unclear, and not detailed:

Q. Do you know why David Porras gave up his remainder interest?

A. Yes. I told you, because of the adoption suit with Dan Christie.

\* \* \* \* \* \*

A. Okay. When my sister, two of my sisters, they adopted Jan—John—Dan Christie and John Christie in order to control all—get all their property, my—both of my sisters' property. And so when they did that, then they came in on the other part, our life estates. So when that happened, that took away

---

19. The Trust and Blakley also make the argument, as they did with respect to the 100 Acres Remainder Interest, that even if the Christie Property Remainder Interest were a "property interest" of the Debtor within the meaning the Texas fraudulent transfer provisions, its "transfer" by means of the Agreed Judgment is not avoidable under that statute because it was not a voluntary transfer by the Debtor. This argument has previously been rejected by the court (see Footnote 10 above) with respect to the 100 Acres Remainder Interest, and for the same reason the court now rejects it as to the Christie Property Remainder Interest.

20. The Trust and Blakley refer to paragraphs in an "Exhibit B" to their Motion for Partial Summary Judgment, which they describe as Blakley's "Affidavit." The only Exhibit B to that Motion is a few pages of excerpts from Blakley's deposition testimony. The court is unable to locate any affidavit of Blakley in their summary judgment evidence. Obviously, there are no numbered paragraphs in the deposition transcript, and whatever specific references the Trust and Blakley have supplied to support their argument regarding the adoptions is useless to the court. Instead, the court has focused on the only answers in the deposition excerpts that refer to the adoptions.

from David and David said, "It isn't mine, it's yours, and they have taken your other part, so this is—I am giving all my—my rights up to you," and he did.

\* \* \* \* \* \*

A. Yes, that's when he gave me—when the adoption was—took place, that's—see, that threw us out. We were—my three sisters and I were supposed to have inherited all of that. And then these boys go in and want to be adopted because they wanted it. These two—... Christie boys. I mean, not Christies.

\* \* \* \* \* \*

A. ... And then when they came in with that adoption suit and everything, well, that threw—really threw my sisters and I out, practically, and David said, "That makes me get your property." ...

This is the sole evidence the Trust and Blakley offer in support of the fact of these adoptions, their validity, and their effect under the will. No documentation, and no testimony from the adopted cousins, was submitted by the Trust or Blakley.

In response, the Plaintiffs refer to Plaintiffs' Exhibit 8 in support of their argument that the will did not include adopted children as "children" of the aunts. Exhibit 8 is a petition filed in state court; its recitations, therefore, are mere allegations and not competent summary judgment evidence, as would be the judgment referred to in the petition.

Although not argued or mentioned by the parties, the court notes that the Agreed Judgment itself contains a provision ordering that the adoptions are *"ineffective as creating any rights in said adoptive child[ren] as a lineal descendant of D.P. Christie, Sr., deceased, under the provisions of the Will."* Defendants' Exh.

2, p. 11 (emphasis added). Although, as a provision of a consensual judgment or settlement, this provision is not binding on the Trustee or the IRS under res judicata or collateral estoppel theories, the Trust and Blakley *were* parties to, or in privity with a party to, the suit that resulted in the Agreed Judgment. They, then, *are* bound by it under res judicata principles. Accordingly, the court finds that the Christie Property Remainder Interest was held by the Debtor and not his cousins as of the entry of the Agreed Judgment and, therefore, denies the Trust's and Blakley's Motion for Partial Summary Judgment, to the extent it asks to dismiss the Plaintiffs' fraudulent transfer claims involving the Christie Property Remainder Interest because the Debtor's cousins, and not the Debtor, held such interest.

As their second argument that there was no transfer of an interest of the Debtor in property, the Trust and Blakley assert that the 25% Portion that was transferred to the Trust was property of HWD Corporation and not the Debtor.

It is not disputed that under the Agreed Judgment HWD Corporation is named as the recipient of an absolute (albeit residual) interest of 25% of a 1/7th interest in the Christie Property Trust, to which Porras's Christie Property Remainder Interest and others' pre-litigation interests were contributed. With respect to this 25% Portion, the Trust and Blakley argue that after the entry of the Agreed Judgment it was HWD Corporation, and not the Debtor, that transferred this interest to the Trust (and, subsequently, to Blakley individually, they claim).

The Plaintiffs contend that HWD Corporation is but an alter ego of Porras. If this is the case, then HWD's receipt of the 25% Portion under the Agreed Judgment was the same as Porras's receipt, and any subsequent transfer by HWD to the Trust

would be a transfer by Porras of his interest in property.

■■■■■ Under Texas law, an alter ego remedy is one of six distinct methods of piercing the corporate veil, one which applies when there is such an identity or unity between a corporation and an individual or another entity such that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir.1987), *citing Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). The remedy is based upon equitable concerns. *Id.* In *Castleberry* the Texas Supreme Court stated:

> [An alter ego allegation] is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separate, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.... Alter ego's rationale is: "if the shareholders themselves ˙ disregard the separation of the corporate enterprise, the law will also disregard it so far

as necessary to protect individual and corporate creditors."

*Id.* (citations omitted).

In support of the Plaintiffs' contention that HWD is the Debtor's alter ego, the Plaintiffs cite the deposition testimony of the Debtor that, they say, shows that Porras and HWD were "one and the same" [21]: testimony that HWD was "just a name on the checkbook" used for the Debtor's decorating business; that Porras was the "key man of HWD"; and that HWD was inactive for periods of time between its creation and when the Debtor began using its name for his decorating business. *See* Plaintiffs' Exh. 11, Porras's Deposition, pp. 19–22, 297. There are also statements by Edmiston during Porras's deposition [22] to the effect that HWD was never incorporated, never filed corporate tax returns, and was always operated as Porras's sole proprietorship. *See* Plaintiffs' Exh. 11, Porras's Deposition, p. 38.

In response, the Trust and Blakley first assert that the Plaintiffs have not pled for such relief. However, a review of the Amended Complaint shows that it clearly requests a declaration that HWD is the alter ego of the Debtor and that the

---

**21.** There are also unsworn statements by counsel for Porras during the Debtor's deposition that although articles of incorporation were filed with the Secretary of State for HWD, no franchise taxes were paid and its charter was revoked, and that Porras had taken the position in an adversary proceeding against the IRS that HWD was not a corporation, was only a sole proprietorship. *See* Plaintiffs' Exh. 11, Porras's Deposition, p. 21. While such inconsistency may be damaging to Porras's already weak credibility, the unsworn statements by counsel are not competent summary judgment evidence, and the parties cite no findings or judgment entered in reliance on the alleged position. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 207 (5th Cir.1999) ("Most courts have identified at least two limitations on the application of the

[judicial estoppel] doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position."), *citing United States v. C.I.T. Construction Inc. of Texas*, 944 F.2d 253, 258 (5th Cir.1991) ("The 'judicial acceptance' requirement minimizes the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigates the corresponding threat to judicial integrity").

**22.** Edmiston was in fact sworn in for that deposition, so that these statements may also be considered by the court for summary judgment purposes.

Debtor under the Agreed Judgment was therefore the owner of the 25% Portion. Paragraph 5 on page 4 of the Amended Complaint states:

> If HWD is a corporation, Osherow through this lawsuit seeks to pierce the corporate veil.... Porras' bankruptcy estate, through Porras' alter ego HWD, owns the 25% of the 1/7th residual interest in the Christie Property Trust.

The court easily finds this language sufficient to constitute a request for a declaration that HWD was the alter ego of the Debtor.

In the face of the Plaintiffs' evidence on the issue, the Trust and Blakley claim that the Plaintiffs' contention that HWD is Porras's alter ego "has been controverted for purposes of this [the Plaintiffs'] summary judgment motion." *See* the Trust's and Blakley's Response in Opposition to the Second Motion for Partial Summary Judgment, p. 28. However, they present no controverting documentary evidence on the issue—no articles of incorporation, corporate minutes, bank statements, or tax returns, etc., for HWD Corporation.

Similarly, the Trust and Blakley do not offer any independent evidence regarding their only argument (in their Response to the Plaintiffs' Second Motion for Partial Summary Judgment) that the Debtor did not transfer the 25% Portion to the Trust, but rather it was HWD Corporation that transferred that interest to the Trust. In support of this claim, the Trust and Blakley cite only Edmiston's deposition testimony that there was such a transfer after the entry of the Agreed Judgment. *See* Defendants' Exh. 11, pp. 84, 109. As the alleged transferees and/or current owner, the Trust and/or Blakley should have easy access to documentation supporting that

transfer if it exists, but again they offer no document whatsoever—no deed,[23] no property tax receipt, no tax returns ... nothing. Therefore the court rejects this argument of a subsequent transfer as insufficiently supported by summary judgment evidence.

■ Accordingly, considering the evidence offered of HWD Corporation's alter ego status, the absence of any controverting evidence on that issue, and the lack of reliable documentary or other disinterested evidence of a subsequent transfer by HWD, the court finds and concludes that HWD was the alter ego of the Debtor. Therefore, the court must also agree with the Trust's and Blakley's argument that there was no "transfer" of the 25% Portion by virtue of the entry of the Agreed Judgment itself. Stated otherwise, the court finds that, by entry of the Agreed Judgment, the Debtor retained 25% of his interest (albeit changed in form, from the Christie Property Remainder Interest in the real property, to the Christie Property Trust Interest—a fractional residual interest in the Christie Property Trust), transferring only 75% to the Trust. For purposes of the Plaintiffs' request for partial summary judgment, the court also makes no finding that there was a subsequent transfer to the Trust by HWD of the 25% Portion.

As their third argument that there was no transfer of an interest of the Debtor in property, the Trust and Blakley assert that, if the Debtor had an interest that was transferred by the Agreed Judgment, as a mere contingent interest its transfer may not be avoided under Texas fraudulent transfer law. As discussed above where the court addresses this same argument

---

**23.** Defendants' Exh. 6, the Assignment dated 9/27/96 and recorded 9/30/96 by the Trust to Blakley of its interest in the Christie Property Trust, is not probative of this issue; it merely assigns all of the Trust's interest, without describing what that interest was.

with respect to the 100 Acres Remainder Interest, even if Porras's Christie Property Remainder Interest were only contingent, it could be transferred and was a property interest under Texas law. *See* discussion above at pages 26–30. Accordingly, the court finds and concludes the transfer of the Christie Property Remainder Interest may be avoided if the requirements of the TUFTA are otherwise met.

▮ Finally, the Trust and Blakley argue in response to the Plaintiffs' Second Motion for Partial Summary Judgment that, if Porras had any interest in his aunts' properties, those interests were so contingent and disputed that the Agreed Judgment functioned like, and is analogous to, a disclaimer by Porras of an inheritance.[24] As with a disclaimer situation, they argue, the Debtor never had an interest in property that could have or would have been transferred as a result of the Agreed Judgment.

Accepting the Trust's and Blakley's argument would mean that any disposition of a future interest granted under a will, regardless of how long after the death of the testator it occurs (the Agreed Judgment was entered 38 years after Porras's grandfather's death), should be considered merely a disclaimer if it was done to settle a dispute between the will's beneficiaries. The Texas Legislature's and the courts' decisions that a disclaimer of an inheritance may not be challenged as a fraudulent transfer because the beneficiary never actually held any property interest to be transferred were made in the context of a disclaimer statute that provides short deadlines and specific procedures to ac-

complish such a disclaimer. *See* Tex. Bus. & Com. § 24.002(12); *Simpson v. Penner (In re Simpson)*, 36 F.3d 450 (5th Cir. 1994); *see also* Tex. Prob.Code § 37A. Leaving a property interest of record in the name of the beneficiary for long periods of time after the will takes effect, only to be then relinquished as if never held by the beneficiary, would seriously undermine the public's ability to rely on real estate filings.

Even if the Christie Property Remainder Interest were a contingent remainder, as discussed above such an interest is a property interest recognized and transferrable under Texas law. The interest had been held by Porras for approximately 38 years in one form or another. Moreover, entry of the Agreed Judgment did not even have the same result as a disclaimer would have had. If Porras had merely disclaimed his interest, his cousins would have succeeded to the Christie Property Remainder Interest in accordance with the terms of the will. Instead, the Christie Property Remainder Interest was contributed to the Christie Property Trust, and the Trust (and, allegedly Blakley) received the Christie Property Trust Interest.

For all these reasons, the court finds and concludes that the Agreed Judgment should not be treated like a disclaimer of inheritance under Texas law, and therefore rejects the Trust's and Blakley's argument that there was no transfer of these interests.

Based on all the foregoing, the court finds and concludes that the Plaintiffs have established that the Debtor had a property interest, and that, except as to the 25%

---

**24.** The Trust and Blakley also advance this argument with respect to the alleged transfer of the 100 Acres Remainder Interest. As discussed in Footnote 11 above, however, the court need not address the argument with respect to that property, inasmuch as the ar-

gument was not included in the Trust's and Blakley's own Motion for Partial Summary Judgment, and the court has already found that there is insufficient evidence of a transfer of that property to grant summary judgment to the Plaintiffs on those causes of action.

Portion, the Debtor transferred that interest to the Trust. The court does not find, for purposes of these motions for summary judgment, that there was a transfer by HWD to the Trust of the 25% Portion. Accordingly, the court will order that the Plaintiffs' Second Motion for Summary Judgment be denied as it relates to avoidance of any transfer of the 25% Portion.

**■ *Plaintiffs' Element: Whether reasonably equivalent value was received.*** In their Response to the Plaintiffs' Second Motion for Partial Summary Judgment, the Trust and Blakley make two arguments[25] to rebut the Plaintiffs' position that Porras did not receive reasonably equivalent value for his Christie Property Remainder Interest and his 100 Acres Remainder Interest, both of which the Plaintiffs contend were transferred as a result of the Agreed Judgment.[26]

First, the Trust and Blakley contend that reasonably equivalent value was given when Porras's 100 Acres Remainder Interest and his Christie Property Remainder Interest, both of which they claim were merely *contingent*, were relinquished in exchange for the *absolute* interest that was the 25% Portion.[27]

As a second, alternative basis for finding that reasonably equivalent value was received by Porras, the Trust and Blakley argue that in the 1950s or 1960s Blakley gave Porras approximately $250,000–$300,000 as his "inheritance," which she says was consideration for his transfer of the 100 Acres Remainder Interest and the Christie Property Trust Interest. *See* Defendants' Exh. B. On the other hand, the Plaintiffs point to Blakley's deposition testimony that she gave nothing to Porras in exchange for his interest in the property. Plaintiffs' Exh. 23, pp. 26–28.

Whether reasonably equivalent value is given is normally a very fact-intensive in-

---

25. The Trust and Blakley do not assert a third argument that, because the transfers occurred as a result of a court's adjudication, as a matter of law "reasonably equivalent value" was given in exchange. *See Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488 (5th Cir.1993) (holding that state court dismissal of debtor's causes of action was a "transfer" of those claims for fraudulent transfer purposes, but that the dismissal constituted a transfer "for reasonably equivalent value" as a matter of law). Because it was not argued, the court will not address the issue other than to note that *Besing* does not appear applicable in this case in any event, because of the consensual nature of the Agreed Judgment.

26. As noted above, a decision on the issue of reasonably equivalent value with respect to the 100 Acres Remainder Interest is at this point unnecessary, inasmuch as the court has previously found that the Plaintiffs have failed to establish for summary judgment purposes that there was a transfer of that interest. However, because the Trust and Blakley's argument is that the value received for the Christie Property Remainder Interest was given in exchange for not only that interest but also for the 100 Acres Remainder Interest, the court has included the 100 Acres Remainder Interest when it uses the term "transfer" in this discussion. That inclusion is for ease of reading *only*, and is not to be considered a contradiction of the court's previous finding that there was no transfer.

27. As noted above, there is no dispute that this 25% Portion was received in the name of HWD Corporation. The court has already found that HWD Corporation was the alter ego of Porras and, thus, Porras was the recipient of that interest. Even if that were not the case, the Trust and Blakley argue and the summary judgment evidence shows that HWD is a corporation owned by Porras, so that HWD's receipt of the 25% Portion would still have benefitted Porras.

The court also notes that the Trust and Blakley do not contend that Porras's remainder interest under the express terms of the Trust as restated by the Agreed Judgment should also be considered to have been received in exchange for the 75% Portion. *See* Plaintiffs' Exh. 4, Art. II, ¶ 2.2 and the discussion below regarding declaration of the Trust as a self-settled spendthrift trust.

quiry. *See generally In re Erlewine*, 349 F.3d 205, 209 (5th Cir.2003) ("the question of reasonable equivalence is usually a question of fact, or is at least fact-intensive"), *citing Tex. Truck Ins. Agency v. Cure (In re Dunham)*, 110 F.3d 286, 288–89 (5th Cir.1997) and *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1494–95 (5th Cir.1993). Here, there is absolutely no summary judgment evidence of the value of the 100 Acres Remainder Interest and the Christie Property Remainder Interest at the time they were transferred under the Agreed Judgment. Thus, the court is unable to determine what the value received, if any, must be "reasonably equivalent" to.

The Plaintiffs apparently assume that the court will presume that those interests have *some* value. They then argue that *no* value was received for those interests, and therefore—in essence, as a matter of law—no "reasonably equivalent value" could have been received. The Plaintiffs cite Blakley's, Porras's and Edmiston's deposition testimony in support of their contention that Porras received nothing under the Agreed Judgment in exchange for his relinquishment of the 100 Acres Remainder Interest and the Christie Property Remainder Interest. Specifically, Blakley testified in her deposition:

Q. Who does the [100 Acres] remainder interest belong to?

A. [Ms. Blakley]: It's mine.

Q. What did you give David Porras in exchange for his remainder?

A. [Ms. Blakley]: I didn't give him anything.

Plaintiffs' Exh. 23, pp. 26–28. In addition, Porras testified:

The Witness [Porras]: ... I wasn't designated [under the Agreed Judgment] to have an interest.

\* \* \* \* \* \*

Mr. Parker: So they—

Mr. Edmiston: We put in a quarter interest.

Mr. Parker: —distributed your share to HWD?

The Witness [Porras]: Right.

Plaintiffs' Exh. 11, pp. 187, 188. Immediately following this testimony, Edmiston stated under oath: "His mother's share to HWD. Then the next day, two days later when it was all signed, it was signed back to her. All the distributions have always been made to her." Plaintiffs' Exh. 11, p. 188. Finally, the Plaintiffs cite this additional testimony by Edmiston:

The Witness [Edmiston]: ... they said to David, you have got to sign off on this today that you're getting something out of this. Okay?

Q. [Mr. Parker]: That's the HWD?

A. [Mr. Edmiston]: he took it under HWD and then, you know, the same stroke of the pen almost, signed it back to his mother, told them it was signed back to his mother. Then all the distributions that have ever come through go to the Blakley Trust for Mrs. Blakley because she's the only one that owns any portion that was due her or would have ever been due David.

\* \* \* \* \* \*

Q. [Mr. Parker]: Do you know if Mr. Porras received anything for signing HWD back over?

A. [Mr. Edmiston]: No, he did not receive anything for it because he did not want to take—he didn't even want to take part of the interest, but in order for everyone to be satisfied that he would not come back and sue them—okay?—they had to put something in there to where he would get some benefit. He

said he told them going in he didn't want anything, any part of it.

Plaintiffs' Exh. 12, pp. 82–84.

Blakley's testimony is inconclusive at best, because it may be referring to, and is consistent with, the undisputed fact that Porras received nothing *in his own name* under the Agreed Judgment. Porras's and Edmiston's testimony, on the other hand, supports only the position that Porras had nothing *after* HWD's purported transfer of the 25% Portion to the Trust following the entry of the Agreed Judgment; instead of showing Porras received nothing under the Agreed Judgment itself, it *supports* the fact that on the face of that document, in fact, Porras through his alter ego HWD *did* receive something—the 25% Portion. As discussed above, the Plaintiffs have not admitted that the subsequent transfer by HWD to the Trust occurred, and no party has established that transfer for purposes of the parties' motions for summary judgment. Accordingly, even if the court were to presume that the interests that Porras transferred under the Agreed Judgment had some value, it must reject the Plaintiffs' argument that he received *nothing,* and instead finds for summary judgment purposes that Porras received the 25% Portion in exchange for his transfer under the Agreed Judgment of his 100 Acres Remainder Interest and his Christie Property Remainder Interest. The court makes no finding or ruling at this time on whether Porras received "reasonably equivalent value" as a result of any alleged subsequent transfer by HWD to the Trust.

The court having found that *something* was received by Porras, the Plaintiffs must establish that there is no genuine issue regarding whether what was received was "reasonably equivalent value" for the interests transferred. Inasmuch as there is no summary judgment evidence on the value of the interests transferred or on the value of the 25% Portion received, the court finds and concludes that Plaintiffs' Motion for Partial Summary Judgment as to the transfer of both the 100 Acres Remainder Interest and the Christie Property Remainder Interest should be denied.[28]

***Defensive Issue: Whether, because of the contingent nature of the Christie Property Remainder Interest, the Plaintiffs' cause of action is not "ripe" for adjudication.*** Based on the court's finding and conclusion above that, even if the Christie Property Remainder Interest were only a contingent interest, its transfer is subject to avoidance under TUFTA, the court again (as it did with respect to the 100 Acres Remainder Interest) rejects the Trust's and Blakley's argument that the Plaintiffs' fraudulent transfer causes of action are not "ripe" for decision. The court therefore denies the Trust's and Blakley's Motion for Partial Summary Judgment on these grounds.

***Defensive Issue: Whether the Plaintiffs' fraudulent transfer actions with respect to the Christie Property Trust Interest are prohibited by the Rooker–Feldman Doctrine.*** As they did with respect to the actions challenging the transfer of the 100 Acres Remainder Interest,

28. Because the court has found and concluded that the Plaintiffs' Second Motion for Partial Summary Judgment should be denied because there exists a genuine issue regarding whether the value of the 25% Portion was reasonably equivalent to the interests that Porras transferred, it is not necessary to also address whether the Debtor actually received

some unspecified amount of cash, 20 to 30 years prior, whether that receipt was "in exchange for" his transfer of the 100 Acres Remainder Interest and the Christie Property Remainder Interest and, if so, whether it (alone, or in combination with the 25% Portion) was "reasonably equivalent" to the value of those interests.

the Trust and Blakley claim that the Rooker–Feldman Doctrine prohibits such attack on the state court's Agreed Judgment as it relates to the Christie Property Trust Interest, and they ask in their Motion for Partial Summary Judgment that the Plaintiffs' actions to avoid the transfer(s) of that Interest also be dismissed on that basis. As explained in detail above in the discussion on the 100 Acres Remainder Interest, the court finds and concludes that the Rooker–Feldman Doctrine does not apply here because the Trustee and the IRS were not parties, or in privity with parties, in the suit from which the Agreed Judgment resulted. *See In re Erlewine*, 349 F.3d 205 (5th Cir.2003). The court therefore denies the Trust's and Blakley's Motion for Partial Summary Judgment on this grounds as well.

## THE PLAINTIFFS' ACTIONS TO DECLARE THE TRUST'S PROPERTY TO BE PROPERTY OF THE DEBTOR'S ESTATE

Relying on a number of legal theories, for the most part variations on the same theme, the Plaintiffs argue that some or all of the property held by the Trust should be considered property of the Debtor's estate.

First, the Plaintiffs contend that Porras was, at least partially, the settlor of the Trust and should also be considered its de facto beneficiary so that, under Texas' Self–Settlor Rule, those assets that he contributed to the Trust should be subject to his creditors' claims. The Trust and Blakley respond that he is not the beneficiary and therefore the Rule is inapplicable. The Plaintiffs also assert that the Debtor had dominion and control over the Trust, such that its assets should be considered his. Similarly, they contend that the Trust was but a sham, or was Porras's alter ego or mere nominee. The Trust and Blakley

respond that the Plaintiffs have not shown this by their summary judgment evidence, and in fact that evidence shows that Porras did not have, and could not have had, the control over and relationship with the Trust that the Plaintiffs must establish to have the Trust's assets declared available to satisfy Porras's creditors.

***Defensive Issue: Whether Blakley is a necessary party.*** The Trust's and Blakley's argument, discussed at length above, that Blakley as the (alleged) current owner is a necessary party to any action involving the 75% Portion and the 25% Portion, applies as well to the Plaintiffs' causes of action to declare those property interests to be property of Porras's estate. The court has already determined in connection with the fraudulent transfer actions that this issue precludes summary judgment allowing recovery of the property itself. Therefore, the court also finds it should deny the Plaintiffs' request for summary judgment as to recovery of the 25% Portion or the 75% Portion itself (as opposed to the value of the interest) as property of the estate under these causes of action. Also as it has done above, the court finds that the Plaintiffs should be given twenty days to amend their Complaint to join Blakley as a party to this suit with respect to these causes of action, if they desire, and Blakley given 30 days from issuance of summons to file an answer. The court finds that given Blakley's active participation in this case to date, and the stage of the proceedings, no additional time for discovery and no additional dispositive motions should be permitted.

***Plaintiffs' Cause of Action: Whether the Trust was Porras's self-settled spendthrift trust.*** The Plaintiffs assert a cause of action to declare the Trust to be a spendthrift trust, settled by Porras.

Section 541 of the Bankruptcy Code first provides that "commencement of a [bank-

ruptcy] case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: ... Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

It further provides that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law ... that restricts or conditions transfer of such interest by the debtor ...." An exception to this rule exists, however, so that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(1)(A), (2).

Thus, if a spendthrift trust is enforceable under Texas law, the beneficiary's interest will not be property of his bankruptcy estate. Conversely, the beneficiary's interest in a spendthrift trust *is* property of his bankruptcy estate if Texas law says the trust's spendthrift provisions are unenforceable.

In *Glass v. Carpenter*, the Texas Court of Civil Appeals summarized the law in Texas regarding spendthrift trusts:

> The general rule throughout the American jurisdictions is that a settlor may create a trust in favor of some third party and prohibit the assignment by such party of the beneficial interest in the trust. This rule prevails in Texas. See, Texas cases cited in 19 A.L.R. p. 27. However, the rule is otherwise in cases where the settlor creates a trust and makes himself the beneficiary thereof. In 54 Am.Jur. 134–135, Trusts, § 166, the rule is stated as follows:
>
> > "Public policy does not countenance devices by which one frees his own

property from liability for his debts or restricts his power of alienation of it; and it is accordingly universally recognized that one cannot settle upon himself a spendthrift or other protective trust, or purchase such a trust from another, which will be effective to protect either the income or the corpus against the claims of his creditors, or to free it from his own power of alienation. The rule applies in respect of both present and future creditors and irrespective of any fraudulent intent in the settlement or purchase of a trust. It applies even where one seeking to settle or purchase a trust in his own benefit is a spendthrift in fact, and irrespective of the sex or marital or contemplated marital status of the beneficiary."

*Glass v. Carpenter*, 330 S.W.2d 530, 533–34 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.).

This so-called "Self–Settlor Rule" is codified in the Texas Trust Code, which provides that "[i]f the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest does not prevent his creditors from satisfying claims from his interest in the trust estate." Tex. Prop. Code § 112.035(d).

The Texas Trust Code defines a "settlor" as: "the person who creates the trust. The terms 'grantor' and 'trustor' mean the same as 'settlor.'" Tex. Prop. Code § 111.004(14). The Trust and Blakley argue that Porras did not create the Trust. It was created, they say, years before the Agreed Judgment was entered, and was only "restated" at that time "by virtue of the actions of numerous persons including all parties to the Agreed Final Judgment." *See* The Trust's and Blakley's Response to Plaintiffs' Second Motion for

Partial Summary Judgment, p. 31. In support, the Trust and Blakley cite Defendants' Exh. 2, Blakley's deposition, without specificity as to page and line. It does not appear that there is any dispute, however, about the existence of a predecessor trust and that the Agreed Judgment and the Trust Agreement reflect that the court ordered that the Trust be "clarified, amended and restated" in the Trust Agreement. *See* Plaintiffs' Exh. 4, Art. I, ¶ 1.1(c).

Regardless of how and when the Trust came to be, there is ample case law in Texas that "[t]he person who provides the consideration for a trust is the settlor even if another person or entity nominally creates the trust." *In re Brooks*, 844 F.2d 258, 263 (5th Cir.1988), citing the **Restatement (Second) of Trusts** § 156 comment *f* (1959) (*"Under what circumstances beneficiary is settlor.* In order that a trust shall come within the terms of this Section, it is not necessary that the beneficiary shall have himself conveyed the property held in trust. It is sufficient that he paid the purchase price for a conveyance upon a trust, of which he is the beneficiary or one of the beneficiaries."). The courts look behind the formalities to the substance of the transactions to determine who is a settlor of a trust. *In re Brooks*, 844 F.2d at 263 ("The mold in which the transaction is cast does not determine who is the settlor of a trust.... Neither Texas courts, nor federal courts that follow Texas law, ought to follow a purely paper trail. We look instead to the reality that lies behind.").

The Plaintiffs ask the court to determine, on summary judgment, that the Debtor was the settlor of the Trust with respect to the 100 Acres Remainder Interest and the Christie Property Trust Interest that, they claim, he contributed to the Trust. In support, they offer the summary judgment evidence discussed above in connection with their fraudulent transfer actions, to show that he contributed those interests.

The court has already found that the Plaintiffs have failed to prove, for summary judgment purposes, that there was a transfer of the Debtor's 100 Acres Remainder Interest to the Trust by the Debtor. While it is undisputed that the Debtor held the 100 Acres Remainder Interest at some point in the past and that, no later than September of 1988 when the Agreed Judgment was entered, the Trust became the owner of that Interest, there is conflicting summary judgment evidence regarding when and how the transfer took place. While the date of the transfer is not itself material to this cause of action to declare a self-settled trust, whether the transfer was made directly to the Trust or to some third person who contributed it to the Trust, the court finds, *is* material to the self-settlement issue. As stated above, the only transaction cited by the Plaintiffs to establish a transfer by the Debtor of the 100 Acres Remainder Interest is the entry of the Agreed Judgment. In the face of summary judgment evidence disputing whether the Debtor held the 100 Acres Remainder Interest as of the entry of the Agreed Judgment, the court finds that there is also a genuine issue of material fact as to whether the Debtor contributed it to the Trust for purposes of determining whether the Trust should be considered self-settled as to the Debtor.

For a similar reason the court finds that the Plaintiffs have not shown that the 25% Portion was contributed by the Debtor to the Trust. The court has already determined that under the Agreed Judgment the Debtor, through his alter ego HWD Corporation, received the 25% Portion and that there is insufficient summary judgment evidence to establish that there was

a subsequent transfer of that interest by HWD to the Trust.

 That leaves only the 75% Portion that the Plaintiffs might show, for summary judgment purposes, was contributed by Porras to the Trust. If only a portion of a spendthrift trust's property is contributed by a beneficiary, then only the beneficiary's interest in that self-settled portion, or its value,[29] becomes property of the beneficiary's bankruptcy estate.[30] *In re Shurley*, 115 F.3d 333, 338 (5th Cir. 1997).

 The court has also determined that, under the Agreed Judgment, Porras relinquished his Christie Property Remainder Interest, and the Trust received 75% of a 1/7th residual interest in the Christie Property Trust. That trust received the entire interest in the Christie Property under the Agreed Judgment. Looking beyond the formalities, the substance of this transaction was the contribution of the 75% Portion by Porras to the Trust. Thus, to the extent of the 75% Portion, the court finds that Porras was a settlor of the Trust.

 To be a "self-settled" trust, however, the Plaintiffs must also show that the Debtor was the beneficiary of the Trust. Stated otherwise, the trust must have been created for the benefit of the settlor. *See In re Goff*, 706 F.2d 574, 587 (5th Cir.1983) ("The general rule is well established that

if a settlor creates a trust *for his own benefit* and inserts a 'spendthrift' clause, restraining alienation or assignment, it is void as far as creditors are concerned and they can reach the settlor's interest in the trust.") (emphasis added); *see also* **Restatement 2d of Trusts** § 156 ("Where a person creates *for his own benefit* a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.") (emphasis added).

The Trust and Blakley argue that the Trust was created for the benefit of Blakley—that she is the sole beneficiary named under the Trust document. *See* the Trust's and Blakley's Response to Plaintiffs' Second Motion for Partial Summary Judgment, p. 29 ("As Porras is not a beneficiary of the Blakley Trust, the Self–Settlor Doctrine cannot be invoked to capture the assets of the Blakley Trust."). The undisputed facts that the Trust was created much earlier and only restated in the Agreed Judgment, they say supports this argument.

Blakley is not the *sole* beneficiary of the Trust; the Debtor also has a remainder interest in the Trust. The Trust Agreement provides that while Blakley was granted all of the income interest and a life estate interest in the principal, Porras was granted the remainder interest in the principal of the Trust.[31] *See* Plaintiffs'

---

**29.** *See In re Shurley*, 115 F.3d at 338 n. 14, noting that if the property has been transferred again, and is no longer property of the spendthrift trust, its value must be determined and may be recovered.

**30.** In addition, the general rule is that, if the court declares a trust to be self-settled, the creditors can reach not only the settlor's express interest, but also the maximum amount that the trust (through its trustee) could pay the beneficiary or apply for his benefit under the terms of the Trust. *Shurley*, 115 F.3d at 339–40, *citing Bank of Dallas v. Republic Na-*

*tional Bank of Dallas*, 540 S.W.2d 499 (Tex. Civ.App.—Waco 1976, writ ref'd n.r.e.). Under the Trust Agreement here, however, there are no provisions that would give the Trustee discretion to pay Porras anything more than the remainder of the principal of the 75% Portion, at Blakley's death.

**31.** It is true that the interest is subject, first, to the Trust's duty (through its trustee) to "pay any part or all of the principal of the Blakley Trust to Lucille Christie Blakley as may be reasonably necessary to provide for her health, education, maintenance and sup-

Exh. 4, pp. 3–4. Specifically, Paragraphs 2.1, 2.2 and 2.3 of the Trust Agreement provide:

2.1 *Income and Principal of the Blakley Trust.* So long as Lucille Christie Blakley is living the entire trust estate shall be held in the Blakley Trust. The Trustee shall pay all of the net income of the Blakley Trust,as received and not less frequently than monthly, to Lucille Christie Blakley for her health, education, maintenance, support, care, enjoyment, advancement in life and comfort. The Trustee may pay any part or all of the principal of the Blakley Trust to Lucille Christie Blakley as may be reasonably necessary to provide for her health, education, maintenance and support. Upon the death of Lucille Christie Blakley, any accrued and undistributed income of the Blakley Trust shall be distributed to the estate of Lucille Christie Blakley.

2.2 *Termination and Distribution of the Blakley Trust.* The Blakley Trust shall terminate upon the death of Lucille Christie Blakley and, subject to Paragraph 2.3 of this Item II, all of the principal of such trust shall be distributed to David Christie Porras.

2.3 *Special Power of Appointment to Lucille Christie Blakley.* Lucille Christie Blakley may by her last will and testament or codicil thereto direct and appoint that all or any part of the principal of the Blakley Trust, if such trust has not been terminated prior to her death, shall be paid to, or held for the benefit of, any one or more of a group or class of her issue (born or unborn) and/or any one or more charitable, religious or educational institutions all as Lucille Christie Blakley shall, in her absolute discretion, direct.

The Plaintiffs refer only once, in passing, to the Debtor's remainder interest in the Trust.[32] They never mention this interest in their pleadings and briefing on this cause of action, arguing instead that the Debtor is the "de facto" beneficiary of the Trust. *See* Amended Complaint, p. 6 ("when the assets ... were purportedly conveyed to the Blakley Trust, Porras retained no beneficial interest from the Blakley Trust .... Thus, the Blakley Trust, by its terms ... eliminated David Porras as a remainderman beneficiary."). They cite no evidence that the Debtor no longer holds this interest, but the court notes that in Plaintiffs' Exh. 11, p. 182, the Debtor testifies: "... the Blakley Trust, which I am not a beneficiary of. Everything my mother owns, will inherit or get will go to the Catholic church." Thus, there is some evidence that in June of 1996, when Porras's deposition was taken, he believed his mother had exercised her special power of appointment under the Trust Agreement and provided in her will that the Catholic Church, and not Porras, will receive the remainder interest in the principal of the Trust at Blakley's death.

That evidence is not conclusive, however, on whether Porras had an interest when the Agreed Judgment was entered. Since his mother could have decided, and may still decide, in her absolute discretion, to change her will at any time and allow him to take as remainderman at her death. Essentially, so long as his mother is living, the Debtor has a remainder interest sub-

port" and then, as discussed below, to Blakley's power of appointment which is exercisable at her death through her will.

**32.** *See* United States of America's Brief in Support of Renewed Second Motion for Par-

tial Summary Judgment, p. 29 ("Porras currently serves as both the sole trustee and remainderman beneficiary of the Blakley Trust.").

ject to divestment by her dying with a will that exercises her power of appointment. While such a power of appointment may affect the value of the Debtor's interest under the Trust, they are irrelevant to the question of whether the property contributed by the debtor to a self-settled trust should be considered property of the estate. *In re Shurley*, 115 F.3d at 338–39.

Neither party addresses on summary judgment whether this remainder interest satisfies the requirement of the Self–Settlor Rule that Porras be a beneficiary of the Trust. The court therefore reviews for itself what authority may bear on the issue.

 The existence of a spendthrift trust depends on whether the settlor's manifested intention was to make the trust estate immune from liability for debts of the beneficiary and to prohibit its alienation by him or her during the term of the trust. 72 Tex. Jur.3d Trusts § 39, *citing State of Cal. Dept. of Mental Hygiene v. Bank of Southwest Nat. Ass'n*, 348 S.W.2d 731 (Tex.Civ.App.—Waco 1961), *aff'd*, 163 Tex. 314, 354 S.W.2d 576 (1962); *Long v. Long*, 252 S.W.2d 235 (Tex.Civ.App.—Texarkana 1952, writ ref'd n.r.e.). The court therefore must look at Porras's intent in contributing the 75% Portion, as that intent is manifested in the express terms of the Trust. In doing so, it considers the rationale behind the Self–Settlor Rule—that is, the public policy denouncing "de-

vices by which one frees his own property from liability for his debts or restricts his power of alienation of it."

Looking at the provisions of the Trust Agreement, therefore, it is apparent that there is no restriction whatsoever on alienation of the Debtor's remainder interest. The only restriction in the Trust Agreement on alienation of an interest refers to the interest of a "beneficiary," specifically defined in that provision to mean only Blakley. *See* Plaintiffs' Exh. 4, p. 10.[33] That provision can only be read as applicable to her and her interest.

The grant to his mother under the Trust of all the income from the 75% Portion and of the absolute power to divest Porras of his remainder interest in that interest, arguably is a form of "restriction" on his alienation of that interest in the 75% Portion. The Plaintiffs have not expressly made this argument, however, and they have cited no authority for construing the provisions of the Trust in this way. The court therefore declines to consider this issue at this stage of the proceedings.

The Plaintiffs do argue, however, and strenuously, that the Debtor was a "de facto beneficiary" of the Trust—apparently of both the income and life tenant's interest in the principal, in addition to his remainder interest in the principal—as a result of his control over Edmiston, the trustee under the Trust, and as evidenced

---

33. Specifically, Paragraph 4.3 provides as follows:

> *Inviolability of the Trust.* Except for the provisions of Paragraph 4.1 of Item IV of this Trust Instrument, all payments or distributions from the trust estate, whether of income or principal, to Lucille Christie Blakley ("the beneficiary") shall be made to her personally, and no part of such income or principal shall ever be transferred or assigned by the beneficiary, and shall not be subjected to any judicial process against the beneficiary before the same has been paid

> or distributed to such beneficiary. No interest of the beneficiary, or any part thereof, shall, in any event, be subject to the sale, hypothecation, assignment or transfer by such beneficiary, nor shall the principal or income of the estate be liable for the debt of the beneficiary or subject to any judgment against the beneficiary, nor shall any part of such principal or income be seized, attached or in any manner taken by judicial proceedings against the beneficiary on account of the debts, assignments, sale or incumbrances of the beneficiary....

by the numerous payments and distributions that the Trust made to him. In support they cite a number of deposition references that show that Edmiston was the sole trustee of the Trust and as such paid Porras's living expenses from Trust funds, provided him a car, gave him cash on demand, and that Porras had no other source of income other than the Trust during this time. *See* Plaintiffs' Exh. 11, Porras's Deposition, pp. 10, 11, 14, 18, 275–83. *See also* Defendants' Exh. 9, Porras's Deposition, p. 168 (the Trust made Porras's mortgage payments). In addition, Edmiston stated under oath during Porras's deposition that Porras "was not providing any services for the trust. This was not any compensation. This was lump sums of cash money that she [Blakley] saw that he got either from herself or from the Trust after 1988." Defendants' Exh. 9, Porras's deposition, p. 167.

In response, the Trust and Blakley contend that the Trust has always operated as stated in the Trust Agreement, with Blakley as beneficiary. They cite in support the Trust Agreement and Edmiston's deposition testimony that his job as trustee of the Trust was "not doing what she [Blakley] wants.... My job as trustee is to create an income to support her and her invalid sister ... to create an income, not doing what she wants...." *See* Defendants' Exh. 11, Edmiston's Deposition, p. 59. They cite Porras's deposition, as evidence that Blakley, not Porras, receives distributions from the Trust, and that the Trust's payments to Porras were compensation for services in the interior decorating business operated by the Trust. *See* Defendants' Exh. 11, Edmiston's Deposition, p. 96, and Exh. 9, Porras's Deposition, pp. 257–58. Edmiston did testify that the properties the Trust owned in New Mexico provided income to Blakley of about $2,300 per month.

In addition, the Trust and Blakley cite Porras's deposition to support their claim that Blakley received distributions from the Trust related to its interest in the Christie Property Trust. *See* Defendants' Exh. 9, Porras's Deposition, p. 265. That testimony by Porras appears, however, to be a reference to distributions from the Christie Property Trust and, as the court reads it, at most shows that that trust makes a distribution, which Blakley considers to be "her" distribution, to the Trust. As the court reads it, it does not show that the Trust distributed that property to Blakley.

Thus, while some of what the Trust and Blakley have cited as summary judgment evidence does not appear to support their argument, there is still evidence that Blakley is the named beneficiary of the income and life tenant's interest in the Trust, that she received about $27,000 a year from the Trust, and that Porras received about $12,000 per year from it. *See* Defendants' Exh. 9, Porras's deposition, p. 276. There is also some testimony that the payments by the Trust were loans which Porras was expected to pay back. *See* Defendants' Exh. 9, Porras's deposition, p. 167.

The court finds that this evidence is sufficient to create a genuine issue of material fact regarding whether Porras was a "de facto beneficiary" of the Trust. Moreover, the Plaintiffs have provided no authority whatsoever—and the court has found none—on what is required to establish a "de facto beneficiary" of a trust. Even if it were clear that Porras was receiving payments and property that was not compensation and not in exchange for any consideration, it is therefore not clear that such a finding, by itself, is sufficient to establish a "de facto beneficiary" under the Trust. Such payments might be considered gifts from Blakley if done at her direction or, as the Trust and Blakley ar-

gue, might constitute an improper use of the Trust's funds by Edmiston, creating a cause of action against him, or even against Porras, by the Trust or Blakley, as its beneficiary. That those improper payments, if proved, would alone make Porras a beneficiary of the Trust, has not been shown.

Finally, even if the court were to find that Porras was the de facto beneficiary, it is also unclear that Blakley's interest in the 75% Portion should be displaced entirely. Where a self-settled trust also has beneficiaries other than the settlor, it has been held that it should not be declared void ab initio, because it may not be terminated without the consent of those other beneficiaries. *See Fewell v. Republic National Bank of Dallas,* 513 S.W.2d 596 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.).

For all of the foregoing reasons, the court finds and concludes that the Plaintiffs' request for summary judgment on their cause of action to declare the Trust to be a self-settled spendthrift trust should be denied.

**■ *Plaintiffs' Cause of Action: Whether the Trust should be declared null and void because under Porras's complete dominion and control.*** The Plaintiffs have argued in their Second Motion for Partial Summary Judgment that Porras exercised such dominion and control over the Trust that it should be declared null and void. They point to the facts that Porras is now the sole trustee as well as the remainderman beneficiary of the Trust, and that before Porras was trustee, his best friend Edmiston was trustee and "allowed Porras unfettered access to trust assets." They also rely on Judge Furgeson's previous findings in the Trust's and Blakley's suit against the IRS, on the issue of control of the Trust:

One of Edmiston's early decisions as Trustee was to cause the Trust to get into the business of interior decorating. The Trust operated both out of a warehouse leased by one of Porras' companies, not by the Trust, and out of an office leased by another of Porras's companies, not by the Trust, with a phone listing bearing Porras's name, not the Trust's. . . .

Edmiston has never kept an inventory of the interior decorating property owned by the Trust. He testified that no records exist to substantiate the Trust's ownership of any of its properties. In addition, there are no cost records relating to any of the Trust property. Edmiston has never caused financial statements to be prepared for the Trust. He has never filed tax returns for the Trust. No gain has ever been recorded in connection with the sale of any Trust property. Although Edmiston does not operate or manage the Trust in accordance with normal business or accounting procedures, neither Mrs. Blakley nor Porras object to his management. . . . Nor does she question the decision by the Trust to compensate Porras and Edmiston for their services by paying their housing, transportation and per diem expenses on a periodic basis, rather than by paying them salaries or consulting fees.

Because of the nature of *the management of the Trust by Porras* and Edmiston, *who together control the Trust's operation, either in name or in fact,* there were suggestions at trial that the Trust was being conducted for an improper purpose. . . .

Plaintiffs' Exh. 3, pp. 9–11 (emphasis added). Thus, Judge Furgeson has expressly found that Porras, in conjunction with Edmiston, managed and controlled the Trust.

As legal support for their argument that, based on this factual finding of control, this court should declare the Trust null and void, the Plaintiffs cite *In re Hall*, Adversary A97–4059 (Bankr.E.D.Tex. 1997), a copy of which is included as Plaintiffs' Exh. 18. In that bankruptcy court decision, Judge Donald Sharp examined the Debtor's relationship with a trust in connection with a request to extend a preliminary injunction prohibiting the trust from transferring assets. In this procedural posture, the court was only required to find that the movant had *a substantial likelihood* of prevailing on the merits of his claim that the assets of the trust, of which the debtor was the beneficiary, should be declared property of his estate. Furthermore, in that case it appears that the debtor was the *only* beneficiary under the trust, which was alleged to be a discretionary or support trust. The court found that

> the Debtor, through a corporation called Hall Investments, Inc., has sole and total control of the assets of the trust. It appeared from the evidence adduced at this hearing, that the assets in the trust and the income generated by the trust was simply an account used by the Debtor for his daily living expenses with no restraint or control from any external source whatsoever.

*In re Hall* at p. 7.

Furthermore, the court in *Hall* was addressing whether a spendthrift or other protective trust was so controlled by the beneficiary that the protective provisions should be invalidated. As discussed above, this court does not find, for summary judgment purposes, that the Trust was Por-

ras's spendthrift trust. Even if it is Blakley's spendthrift trust, its control by a third party such as Porras presents a *very* different factual and legal situation than that addressed by the court in *Hall*.

The bankruptcy court's analysis and decision in *In re Shurley*, 171 B.R. 769 (Bankr.W.D.Tex.1994),[34] illustrate the difference. In *Shurley*, the bankruptcy court concluded that "[e]ither substantial control or self-settlement may operate to invalidate protective trust provisions." *Id.* at 782.[35] The court then found that the beneficiary of the spendthrift trust in that case had "exhibited sufficient dominion and control over the Trust assets *to defeat the Trust's protective character.*" *Id.* (emphasis added). The court did *not* hold that dominion and control would nullify and void the entire trust, as the Plaintiffs seem to request here. In this case, the court has declined to find on summary judgment that the express terms of the Trust granting Blakley her beneficial interests are no more than a disguised restriction on Porras's alienation of what should be interpreted as his beneficial interest. Absent such a conclusion, the only terms of the Trust that create its "protective character" are the spendthrift provisions that protect *Blakley's* interest. "[D]efeat of the Trust's protective character" therefore would invalidate only those provisions. It makes no sense to allow, and *Hall* and *Shurley* do not support allowing, *Blakley's* creditors to obtain access to the Trust's assets because of control exercised by *Porras* over the Trust's assets.

Inasmuch as the Plaintiffs have not provided the court with authority on this ap-

---

**34.** *Rev'd*, 115 F.3d 333 (5th Cir.1997).

**35.** The Fifth Circuit Court of Appeals expressly declined to decide whether the bankruptcy court was legally correct in deciding that control could invalidate the protective provisions of a trust; rather, because no party had raised

the issue on appeal, it assumed the bankruptcy court was correct, while noting that no party had provided any authority to support the bankruptcy court's decision on that issue. *See Shurley*, 115 F.3d at 342 n. 34.

parently novel application of this theory to the facts in this case, where the Debtor is not the only, nor the even the primary, beneficiary of the Trust, the court finds that this issue should not be decided on summary judgment without full consideration of all the facts.

In addition, even if the Trust were viewed for purposes of this cause of action as Porras's spendthrift trust, the evidence offered by the Plaintiffs is insufficient to establish, for summary judgment purposes, the kind of control necessary. As discussed above, the evidence provided by the parties on summary judgment on the payments received by Porras creates a disputed factual issue regarding the purpose and consideration, if any, for those payments. In *In re Shurley*, the Fifth Circuit Court of Appeals reversed the bankruptcy court and held, among other things, that the "fact that the trustees liberally bestowed trust assets on the daughters [i.e., the beneficiaries], by itself, does not establish de facto control by the daughters over the affairs of the estate." The Court instead examined the extent to which the distributions by the trust in the case were inconsistent with the purpose of the trust. *Shurley*, 115 F.3d at 344. In *Hall*, the bankruptcy court interpreted the Court of Appeals' decision in *Shurley* as establishing that "the critical question on the issue of 'substantial control' is not how much money is transferred to a beneficiary, but whether the beneficiary actually exercised control over the Trust" or, in the words of that bankruptcy court, whether the beneficiary exercised a "power of persuasion or coercion ... over an admittedly functioning trustee." Considering the state of the evidence before it now, this court is unable to say as a matter of law that the payments to Porras were inconsistent with the stated purpose of the Trust, to provide income and support for his mother.

With respect to the District Court's findings, quoted above, on the issue of control, this court notes that Judge Furgeson himself acknowledged the limited purpose of those findings: "In this case, of course, the court is not required to make any judgments about Edmiston's fiduciary performance or Porras's role in that performance; the court is allowed, however, to examine the performance of both as it bears on the credibility of Edmiston and Porras generally." Plaintiffs' Exh. 3, p. 11. Thus the District Court made those findings solely for credibility purposes, and in the context of deciding causes of action that were very different from this action, which seeks to declare all of the Trust's assets to be property of this estate. Therefore, this court is reluctant to import those findings wholesale and apply them conclusively to a substantive element of a cause of action, such as the control and dominion element of the Plaintiffs' cause of action here. Rather, this court believes that it should have the opportunity to assess, first-hand at trial, the totality of the evidence (including the credibility of all witnesses who testify before it) on this fact-intensive issue.

For all of the foregoing reasons, the court finds that the Plaintiffs' Second Motion for Partial Summary Judgment should be denied as to their cause of action to declare the Trust null and void because of Porras's alleged dominion and control over it.

***Plaintiffs' Cause of Action: Whether the Trust's assets should be declared property of the estate because it was a sham and/or Porras's alter ego/nominee.*** As their final cause of action, the Plaintiffs assert that, by virtue of Porras's relationship with the Trust, its trustee Edmiston, and its nominal beneficiary Blakley, the Trust should be declared his alter ego or

mere nominee, used by Porras to avoid payment of his debts, including his taxes.

■ "In seeking to satisfy legitimate tax debts, the government may levy on property held by a corporation or other business entity, when the corporation or other business entity is determined to be the alter ego or nominee of the taxpayer." *Valley Fin., Inc. v. United States*, 629 F.2d 162, 171 (D.C.Cir.1980). "State law governs the determination of whether there exists an alter ego from whom the government may satisfy the obligation of a taxpayer." *Wolfe v. United States*, 806 F.2d 1410, 1411 (9th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987).

As discussed above in connection with the Plaintiffs' claim that HWD Corporation was Porras's alter ego, this remedy is normally a method of piercing a corporate veil when there is such an identity or unity between a corporation and an individual or another entity such that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987), *citing Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). Here, it is not a corporation but a trust whose separateness the Plaintiffs seek to disregard. It is also not the owner—not the creator, nor the named principal beneficiary—of that trust whom the Plaintiffs seek to have declared to be not separate from the trust.

■ The Plaintiffs have not cited any authority for applying this doctrine to a trust. However, the nominee theory and the alter ego remedy are not exclusively applied to corporations. *See e.g., Loving Saviour Church v. United States*, 728 F.2d 1085 (8th Cir.1984) (holding that a church, an unincorporated association, was the alter ego of the taxpayer under South Dakota law, and could be levied on to satisfy taxpayer's delinquent taxes). The court is satisfied that under appropriate circumstances the doctrine may apply to a trust.

■ The factors that the courts consider in deciding whether an entity is the alter ego of another are also generally phrased in terms of a corporate entity and its shareholder, often a subsidiary/parent corporation relationship. While the Fifth Circuit has adopted a totality of the circumstances approach to this issue, the non-exhaustive list of factors it considers is:

1. the parent and subsidiary have common stock ownership;

2. the parent and subsidiary have common directors or officers;

3. the parent and subsidiary have common business departments;

4. the parent and subsidiary file consolidated financial statements;

5. the parent finances the subsidiary;

6. the parent caused the incorporation of the subsidiary;

7. the subsidiary operated with grossly inadequate capital;

8. the parent pays salaries and other expenses of subsidiary;

9. the subsidiary receives no business except that given by the parent;

10. the parent uses the subsidiary's property as its own;

11. the daily operations of the two corporations are not kept separate; and

12. the subsidiary does not observe corporate formalities.

*Oxford Capital Corp. v. U.S.*, 211 F.3d 280, 284 n. 2 (5th Cir.2000).

■ On the other hand, the factors that courts commonly consider in deciding whether an entity holds property merely

as the nominee of an individual taxpayer are:

1. whether the individual is in a position of control or authority over the entity;

2. whether the individual controls the entity's actions without need to consult others;

3. whether the individual uses the entity to shield himself from personal liability;

4. whether the individual uses the business entity for his own financial benefit;

5. whether the individual mingles his own affairs in the affairs of the business entity; and

6. whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business debts.

*Id.* at 284 n. 1 (5th Cir.2000), *citing Towe Antique Ford Foundation v. I.R.S.,* 999 F.2d 1387, 1391 (9th Cir.1993).

 Judge Furgeson has clearly already made numerous findings that the Trust failed to keep records and observe formalities. *See* Plaintiffs' Exh. 3. Other facts and evidence related to these factors are those discussed above regarding the Trust's payments to Porras, the purpose and consideration (or lack of consideration) for those payments, and Edmiston's close relationship with Porras. This court has already indicated that the evidence shows there are genuine issues regarding these material facts. Accordingly, the court finds that the Plaintiffs' Second Motion for Partial Summary Judgment, as it relates to their cause of action to declare the Trust to be a sham and/or the alter ego/nominee of Porras, should be denied.

*SUMMARY AND CONCLUSION*

In summary, the court finds and concludes that both the Plaintiffs' Second Joint Motion for Partial Summary Judgment and the Trust's and Blakley's Motion for Partial Summary Judgment should be denied. A separate order will be entered as to each Motion.

In addition, the court will issue an order allowing the Plaintiffs twenty days to amend their Complaint to join Blakley as a defendant and allowing her a reasonable time to file an answer.